UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/20/2020

BDG Gotham Residential, LLC, *et al.*,

        Plaintiffs,

–v–

Western Waterproofing Company, Inc., *et al.*,

        Defendants.

19-cv-6386 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    BDG Gotham Residential, LLC, and its construction manager, ZDG, LLC, brought suit against a subcontractor and the subcontractor's surety following a construction accident. Gotham and ZDG allege that the subcontractor, Western Waterproofing Company Inc., doing business as Western Specialty Contractors, overloaded and failed to tie down a mini crane, resulting in extensive damage to the construction site and triggering adverse regulatory consequences. They assert claims against Western Waterproofing for breach of the construction subcontract, negligence, and gross negligence. They also claim that the surety, Western Surety Company, breached the terms of its performance bond by failing to perform Western Waterproofing's obligations under the subcontract following notification of the subcontractor's default.

    Western Waterproofing moves to dismiss the claims for negligence and gross negligence, and Western Surety moves to dismiss the claim against it insofar as it seeks damages in excess of the penal sum of its bond. For the reasons that follow, the Court denies the subcontractor's motion and grants the surety's motion.

I.      **Background**

For purposes of this motion, the Court takes as true all factual allegations in the Plaintiffs' amended complaint ("FAC"), Dkt. No. 29, and draws all reasonable inferences in their favor.

In September 2016, Gotham contracted with ZDG for the construction on an eleven-story mixed-use building on East 125th Street in Manhattan. FAC ¶ 9. ZDG entered into a subcontract with Western Waterproofing to install the building's façade in April 2017. *Id.* ¶ 10. The following month, Western Waterproofing and Western Surety executed a performance bond with a penal sum of $3,410,000, which designated Gotham and ZDG as obligees of the bond. *Id.* ¶¶ 18–19; *see* FAC, Ex. A, Dkt. No. 29-1.

Western Waterproofing began installation of a curtain wall in June 2018. FAC ¶ 24. The initial plan called for use of a Glazier rig 2200 mechanical hoist to lift panels for the wall into place. *Id.* Instead, Western Waterproofing's employees ordered a Jekko MPK20W+ mini crane. *Id.* ¶ 25. New York City Department of Buildings regulations require an Alteration Type 2 permit before using such a mini crane and that the crane operator have successfully completed an approved manufacturer's training for the specific make and model. *Id.* ¶¶ 25–26.

In a worksite walk-through around June 21, a business agent from the Local 580 Ironworkers Union warned Western Waterproofing's curtain wall superintendent that none of the dispatched ironworkers were certified to operate a Jekko mini crane, and that they should not do so. *Id.* ¶ 30. The superintendent replied that he "had it covered." *Id.* The following day, the crane rental company delivered the Jekko mini crane to the worksite, and the superintendent assigned an uncertified ironworker to operate it. *Id.* ¶ 31. He further told the ironworker that the

mini crane did not need to be tied off.  *Id.*  He then falsely told one of the engineers involved in the project that he was obtaining the necessary permits.  *Id.* ¶ 32.

Two days later, on June 25, the ironworker attempted to use the Jekko mini crane at the superintendent's direction to hoist panels for the curtain wall into place.  *Id.* ¶ 34.  The mini crane had a load limit of approximately 880 pounds as positioned, but carried a load of about 1,500 pounds.  *Id.* ¶ 35.  The crane tipped over and crashed forward, pushing the boom through to the third floor from the fourth.  *Id.* ¶¶ 34, 37.  The boom flung one worker to the ground and hit another.  *Id.* ¶ 37.  Both endured severe injuries requiring hospital treatment, including head and spinal injuries affecting the workers' ability to speak, walk, and move.  *Id.*  The accident also caused damage to the curtain wall panels and the surrounding property.  *Id.* ¶ 38.

Following the accident, the Department of Buildings issued several violations and stop-work orders, which delayed construction and resulted in cost overruns.  *Id.* ¶¶ 39–40.  Gotham and ZDG also allege construction delays due to Western Waterproofing's failure to timely construct a performance mock up of the curtain wall.  *Id.* ¶ 22–23.

ZDG declared Western Waterproofing to be in default on July 13, 2018.  *Id.* ¶ 44.  It demanded Western Surety complete Western Waterproofing's obligations under the subcontract on the same day.  *Id.* ¶ 45.  Western Surety has taken no steps to remedy the default or to perform Western Waterproofing's obligations under the subcontract.  *Id.* ¶ 47.

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When determining whether a complaint states a claim, a court accepts as true all allegations in the complaint and draws all reasonable inferences in favor of the non-moving party. *Id.*

"On a motion to dismiss a breach of contract claim, '[the court] should resolve any contractual ambiguities in favor of the plaintiff.'" *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 86 (2d Cir. 2015) (quoting *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005)). However, when a plaintiff's claim relies on the terms of a written contract, the court must consider the terms the agreement itself, and need not accept the plaintiff's characterization of them. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005). "Dismissal of a breach of contract claim is appropriate where a contract's clear, unambiguous language excludes a plaintiff's claim." *Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc.*, 11-cv-4509 (RJS), 2013 WL 1385210, at *2 (S.D.N.Y. Mar. 18, 2013).

### III.    Discussion

#### A.    Availability of Tort Liability

Western Waterproofing first contends that because its relationship with Gotham and ZDG arose from a contract, they may not recover for economic losses in tort. The Court disagrees. Gotham and ZDG allege actionable negligence apart from their contractual relationship with Western Waterproofing, and New York law allows tort claims to proceed in these circumstances.

New York law generally disallows claims in tort for the negligent performance of a duty arising under a contract.[1]  *See Calisch Assocs., Inc. v. Manufacturers Hanover Tr. Co.*, 542 N.Y.S.2d 644, 645 (App. Div. 1989).  However, the New York Court of Appeals has recognized a significant "borderland between tort and contract" in which parties in contractual privity may nonetheless have tort claims between them.  *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1368 (N.Y. 1992).  In *Sommer*, the New York Court of Appeals outlined several guideposts for separating claims that may proceed in tort from those that can proceed only in contract.

First, "a contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract."  *Id.* at 1369 (quoting *N. Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 239 N.E.2d 189, 193 (N.Y. 1968)).  Thus, for example, the existence of a contract between two parties does not preclude a claim for fraud.  *See N. Shore Bottling*, 239 N.E.2d at 193.  The duty to refrain from fraud is separate and distinct from the duty to perform the promises made in the contract.  The court in *Sommer* similarly cited a statutory duty to transmit fire alarm signals to the city in allowing negligence claims to proceed against a fire company that failed to transmit alarm signals as required by its contract.  *Sommer*, 593 N.Ed.2d at 1370.

---

[1] This doctrine mirrors the so-called "economic loss rule" as applied in many jurisdictions.  *See* Restatement (Third) of Torts: Liability for Economic Harm § 3 (Preclusion of Tort Liability Arising from Contract (Economic-Loss Rule)).  However, the doctrine known as the "economic loss rule" in New York is much narrower.  *See Amin Realty, LLC v. K & R Const. Corp.*, 762 N.Y.S.2d 92, 93 (App. Div. 2003) ("The economic loss rule provides that tort recovery in strict products liability and negligence against a manufacturer is not available to a downstream purchaser where the claimed losses flow from damage to the property that is the subject of the contract and personal injury is not alleged or at issue." (citing *Bocre Leasing Corp. v. General Motors Corp.*, 645 N.E.2d 1195, 1199 (N.Y. 1995))); *see also Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 15–17 (2d Cir. 2000).  Somewhat confusingly, courts have sometimes used the same name refer to the conceptually distinct principle that tortfeasors may not owe a duty to those who suffer only remote economic harms as a result of their tortious conduct.  *See 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1100–01 & n.1 (N.Y. 2001).  *See generally Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872–877 (9th Cir. 2007).  The Court focuses on the substance of the parties' arguments on the availability of tort liability for economic losses rather than their labeling.

Second, "[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship." *Id.* at 1369. That is, when a contract creates a special relationship between the parties—for example, the relationship between a doctor and a patient, or that between a bailor and a bailee—the law may impose a duty of care in the performance of the contract. *See 17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n of Am.*, 693 N.Y.S.2d 554, 560 (App. Div. 1999) (allowing professional negligence claim against an engineer who designed a defective smoke purge system).

Third, courts should consider "the nature of the injury, the manner in which the injury occurred and the resulting harm." *Sommer*, 593 N.E.2d at 1369 (citing *Bellevue S. Assocs. v. HRH Const. Corp.*, 579 N.E.2d 195, 200 (N.Y. 1991)). "[W]here [a] plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory." *Id.* On the other hand, courts have generally allowed claims where the negligent performance of a contract causes abrupt damage to the plaintiff's person or property. *See, e.g.*, *Sommer*, 593 N.E.2d at 1370 (allowing negligence claim against fire company where failure to transmit fire alarm signal resulted in fire damage); *Reade v. SL Green Operating P'ship, LP*, 817 N.Y.S.2d 230, 232 (App. Div. 2006) (allowing negligence claim against landlord where failure to maintain premises resulted in a burst pipe); *Trustees of Columbia Univ. in City of New York v. Gwathmey Siegel & Assocs. Architects*, 601 N.Y.S.2d 116, 118–19 (App. Div. 1993) (allowing negligence claim against construction contractor where shoddy construction caused a portion of the building's façade to collapse).

Taking as true all allegations in the complaint and drawing all reasonable inferences in the Plaintiffs' favor, this is not a close case under the standard set out in *Sommer*. Gotham and ZDG do not merely claim that Western Waterproofing failed to exercise due care in performing

under the contract. They allege dangerous, irresponsible behavior that would be independently actionable as negligence even absent a contractual obligation to timely complete construction. Like in *Sommer* and *Reade*, Gotham and ZDG allege that Western Waterproofing violated safety regulations that inure to the public benefit. *See* FAC ¶¶ 25–27, 31, 34, 39; *Sommer*, 593 N.E.2d at 1370 ("Holmes' duty to act with reasonable care is not only a function of its private contract with 810 but also stems from the nature of its services [and] New York City's comprehensive scheme of fire-safety regulations . . . ."); *Reade*, 817 N.Y.S.2d at 232 ("[T]he requirements to protect water supply pipes from freezing temperatures and to install a flow alarm are part of a comprehensive scheme of regulations designed to promote fire safety and to ensure the integrity of building sprinkler systems for the protection of the general public."). The injuries caused also extend far beyond a failure to receive the benefit of the bargain. *Cf. Bellevue*, 579 N.E.2d at 200 (disallowing tort claims where "[t]he injury—delamination of the tile—was not personal injury or property damage, but solely injury to the product [purchased under the contract] itself"). The alleged negligence resulted in "sudden [and] precipitous" injuries to both workers and the surrounding property. *Trustees of Columbia Univ.*, 601 N.Y.S.2d at 118; *see* FAC ¶¶ 37–39.

The Court therefore concludes that the existence of a contract with Western Waterproofing does not preclude court liability in these circumstances.

### B.    Proximate Cause

.       Western Waterproofing briefly argues that the "Plaintiffs also do not state how Western Waterproofing's alleged negligence was the 'proximate cause' of Plaintiffs' claimed damages of nearly $40 million." Western Waterproofing Br, Dkt. No. 34, at 8. However, apart from intimating that the extent of damages was unforeseeable, Western Waterproofing does not articulate any legal basis for concluding that the complaint is deficient.

Under New York law, "the overarching principle governing determinations of proximate cause is that a 'defendant's negligence qualifies as a proximate cause where it is "a substantial cause of the events which produced the injury."'" *Hain v. Jamison*, 68 N.E.3d 1233, 1237 (N.Y. 2016) (quoting *Mazella v. Beals*, 57 N.E.3d 1083, 1090 (N.Y. 2016) (quoting *Derdiarian v. Felix Contracting Corp.*, 414 N.E.2d 666, 670 (N.Y. 1980))). "Typically, the question of whether a particular act of negligence is a substantial cause of the plaintiff's injuries is one to be made by the factfinder, as such a determination turns upon questions of foreseeability and '"what is foreseeable and what is normal may be the subject of varying inferences."'" *Id.* (quoting *Kriz v. Schum*, 549 N.E.2d 1155, 1159 (N.Y. 1989) (quoting *Derdiarian*, 414 N.E.2d at 670)). Only in "rare cases" may a court determine, as a matter of law, that a plaintiff's injuries were unforeseeable. *Id.* at 1238–39.

Taking as true all allegations in the complaint and drawing all reasonable inferences in their favor, Gotham and ZDG allege harms that are the entirely foreseeable results of the negligent operation of a crane—injuries to workers, damage to the job site, construction delays, and (in the case of regulatory violations) adverse regulatory consequences. *See* FAC ¶¶ 37–39. These allegations are enough at the pleading stage. To the extent Western Waterproofing contends that the exact amount of damages must be foreseeable, controlling precedent squarely forecloses that argument. *See Hain*, 68 N.E.3d at 1237 ("[T]he mere fact that the defendant contractor could not anticipate the precise manner of the accident or the exact nature of injuries did 'not preclude liability as a matter of law where *the general risk and character of injuries are foreseeable*.'" (quoting *Derdiarian*, 414 N.E.2d at 671)).

The Court therefore concludes that Gotham and ZDG have adequately alleged proximate cause.

### C. Gross Negligence

Western Waterproofing last contends that Gotham and ZDG fail to allege gross negligence, because its alleged failure to "obtain all appropriate and necessary approvals, permits, and licenses" amounted to ordinary negligence at most. Western Waterproofing Br. at 9 (quoting FAC ¶ 63). This argument overlooks numerous other allegations in the complaint that could support an inference of highly culpable conduct.

"Gross negligence means a failure to use even slight care, or conduct that is so careless as to show complete disregard for the rights and safety of others." *Gentile v. Garden City Alarm Co.*, 541 N.Y.S.2d 505, 510 (App. Div. 1989) (quoting N.Y. Pattern Jury Inst. 2:10A (1988)). It "differs in kind, not only degree, from claims of ordinary negligence. It is conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 611 N.E.2d 282, 284 (N.Y. 1993) (quoting *Sommer*, 593 N.E.2d at 1371)). In *Sommer*, the New York Court of Appeals held that gross negligence was a triable question for the jury where an inexperienced fire dispatcher failed to investigate whether alarm signals signified an in-progress fire. *Sommer*, 593 N.E.2d at 1372. The Court held that a reasonable juror could find either that the dispatcher made "a simple [negligent] mistake" or that he acted with the "reckless indifference" required for gross negligence. *Id.*

Taking as true all allegations in the complaint and drawing all reasonable inferences in their favor, Gotham and ZDG allege facts supporting an inference of reckless indifference. They do not allege that Western Waterproofing simply did not know the risks involved with improper use of a Jekko mini crane. Instead, they allege that Western Waterproofing was repeatedly warned not to use the crane without proper precautions but did so anyway. FAC ¶¶ 24, 29–30, 34. And further, that Western Waterproofing knew that safety regulations prohibited using the

crane and deliberately flouted those regulations. *Id.* ¶ 29, 32. These allegations support an inference that Western Waterproofing failed to exercise even slight care and disregarded the rights and safety of others.

The Court therefore concludes that Gotham and ZDG have adequately alleged gross negligence.

### D. Performance Bond

Western Surety contends that New York General Obligations Law § 7-301 limits its liability on the performance bond to the amount of the penal sum. The Court agrees.

General Obligations Law § 7-301 expressly limits a surety's liability to the amount specified in the surety contract:

> When any undertaking executed within or without the state specifies that it is to be void upon payment of an amount or performance of an act, the undertaking shall be deemed to contain a covenant either to pay the amount or to perform the act specified. In the event of payment, the amount recoverable from a surety shall not exceed the amount specified in the undertaking except that interest in addition to this amount shall be awarded from the time of default by the surety.

The New York Court of Appeals has authoritatively interpreted this provision in accordance with its plain and unambiguous meaning: "Recovery against the surety on the bond may not exceed the face amount of the bond as originally fixed, unless an amendatory order is thereafter obtained increasing the amount of the bond, or the surety defaults on the bond, in which later event the amount recoverable from the surety may include interest from the time of default in addition to the face amount." *Tri-City Elec. Co. v. New York*, 473 N.E.2d 240, 241 (N.Y. 1984) (internal citations omitted). This Court is aware of no authority that takes a different view.

Gotham and ZDG dispute the applicability of § 7-301 on two bases. First, they contend that Western Surety's performance bond is not governed by the statute because it creates an

10

"absolute" obligation to assume Western Waterproofing's performance obligations in the event of default.  *See* Plf. Opp., Dkt. No. 42, at 3–6.  Second, they contend that Western Surety independently breached the terms of the bond and so is liable not only for the subcontractor's default, but also its own.  *See id.* at 6–8.  Neither is persuasive.

Western Surety's performance bond meets the clear requirements of General Obligations Law § 7-301.  It sets the amount of the penal sum and specifies that the obligation under the bond "shall be null and void" if Western Surety satisfies the bond.  New York courts typically do not parse the minutiae of surety contracts in this context, because the applicable statute is broad.  *See, e.g.*, *Tri-City Elec.*, 473 N.E.2d at 241; *Fid. New York, FSB v. Aetna Ins. Co.*, 651 N.Y.S.2d 58, 59 (App. Div.1996) ("In general, a surety's liability is limited to the amount specified in the bond plus interest from the date of the surety's default." (citations omitted)); *Carrols Equities Corp. v. Villnave*, 395 N.Y.S.2d 800, 803 (App. Div. 1977) ("Although normally the amount specified in the bond constitutes the maximum liability of a surety, General Obligations Law, s 7-301, provides that such sum may be exceeded by the addition of interest from the date of the surety's default.").  However, at least one New York court has interpreted nearly identical contractual language to limit a surety's liability to the penal sum of the bond.  *See Maine Lumber Co. v. Maryland Cas. Co.*, 214 N.Y.S. 621, 627 (App. Div. 1926), *aff'd*, 155 N.E. 887 (N.Y. 1926).  Gotham and ZDG do not cite a single case where a court has held that a surety contract created an "absolute" obligation to assume performance obligations rather than pay up to the penal sum of the bond.

The Plaintiffs' second argument relies on a line of cases addressing the situation where a surety opts to assume performance obligations.  Courts have consistently held that a surety who elects to assume performance obligations under a surety bond stands in the shoes of the principal

11

and may be liable under the underlying construction contract.  *See Int'l Fid. Ins. Co. v. Cty. of Rockland*, 98 F. Supp. 2d 400, 429 (S.D.N.Y. 2000) (collecting cases).  These cases do not apply where a surety declines to assume performance obligations and pays the cost of completion or defaults under the bond.  In that case, "the amount recoverable from the surety may include interest from the time of default" but is still otherwise limited to the penal sum of the bound.  *Tri-City Elec.*, 473 N.E.2d at 241.

The Court will therefore limit the claim against Western Surety to the penal sum of its performance bond.

## Conclusion

For the foregoing reasons, Western Waterproofing's motion to dismiss (Dkt. No. 34) is DENIED, and Western Surety's motion to dismiss (Dkt. No. 35) is GRANTED.  The claim against Western Surety is limited to the amount of the penal sum.  The Court will set a status conference by separate order.

SO ORDERED.

Dated: November 20, 2020
      New York, New York

                                      ALISON J. NATHAN
                                     United States District Judge