

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 16, 2015

Anton R. Valukas, Esq.
Reid J. Schar, Esq.
Anthony S. Barkow, Esq.
Jenner & Block LLP
919 Third Avenue
New York, NY 10022

Re: General Motors Company – Deferred Prosecution Agreement

Dear Messrs. Valukas, Schar, and Barkow:

      Pursuant to the understandings specified below, the Office of the United States Attorney for the Southern District of New York (the "Office") and the defendant General Motors Company ("GM"),[1] under authority granted by its Board of Directors in the form of the written authorization attached as Exhibit A, hereby enter into this Deferred Prosecution Agreement (the "Agreement").

## The Criminal Information

      1.    GM consents to the filing of a two-count Information (the "Information") in the United States District Court for the Southern District of New York (the "Court"), charging GM with engaging in a scheme to conceal a deadly safety defect from its U.S. regulator, in violation of Title 18, United States Code, Section 1001, and committing wire fraud, in violation of Title 18, United States Code, Section 1343. A copy of the Information is attached as Exhibit B. This Agreement shall take effect upon its execution by both parties.

---

[1] For the purposes of this Deferred Prosecution Agreement, to the extent any conduct, statement, actions, or documents occurred on or are dated before July 10, 2009, references to "GM" shall mean and are intended to mean solely "Motors Liquidation Company," previously known as General Motors Corporation ("Old GM"). Although New GM in the Statement of Facts attached as Exhibit C hereto admits certain facts about Old GM's acts, conduct, or knowledge prior to July 10, 2009 based on New GM's current knowledge, New GM does not intend those admissions to imply or suggest that New GM is responsible for any acts, conduct or knowledge of Old GM, or that such acts, conduct, and knowledge of Old GM can be imputed to New GM. The Statement of Facts is not intended to alter, modify, expand, or otherwise affect any provision of the July 5, 2009 Sale Order that was issued by the U.S. Bankruptcy Court for the Southern District of New York, or the rights, protections, and responsibilities of New GM under the Sale Order..

Anton R Valukas, Esq.
Reid J. Schar, Esq.
Anthony S. Barkow, Esq.
September 16, 2015

## Acceptance of Responsibility

2. GM admits and stipulates that the facts set forth in the Statement of Facts attached as Exhibit C and incorporated herein are true and accurate. In sum, GM admits that it failed to disclose to its U.S. regulator and the public a potentially lethal safety defect that caused airbag non-deployment in certain GM model cars, and that GM further affirmatively misled consumers about the safety of GM cars afflicted by the defect.

## Forfeiture

3. As a result of the conduct described in the Information and the Statement of Facts, GM agrees to pay to the United States $900 million (the "Stipulated Forfeiture Amount") representing the proceeds resulting from such conduct. GM agrees that the allegations contained in the Information and the facts set forth in the Statement of Facts are sufficient to establish that the Stipulated Forfeiture Amount is subject to civil forfeiture to the United States and that this Agreement, Information, and Statement of Facts may be attached to and incorporated into the Civil Forfeiture Complaint to be filed against the Stipulated Forfeiture Amount, a copy of which is attached as Exhibit D hereto. By this Agreement, GM specifically waives service of said Civil Forfeiture Complaint and agrees that a Final Order of Forfeiture may be entered against the Stipulated Forfeiture Amount. Upon payment of the Stipulated Forfeiture Amount, GM shall release any and all claims it may have to such funds and execute such documents as necessary to accomplish the forfeiture of the funds. GM agrees that it will not file a claim with the Court or otherwise contest the civil forfeiture of the Stipulated Forfeiture Amount and will not assist a third party in asserting any claim to the Stipulated Forfeiture Amount. GM agrees that the Stipulated Forfeiture Amount shall be treated as a penalty paid to the United States government for all purposes, including all tax purposes. GM agrees that it will not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, local, or foreign tax for any fine or forfeiture paid pursuant to this Agreement.

4. GM shall transfer $900 million to the United States by no later than September 24, 2015 (or as otherwise directed by the Office following such date). Such payment shall be made by wire transfer to the United States Marshals Service, pursuant to wire instructions provided by the Office. If GM fails to timely make the payment required under this paragraph, interest (at the rate specified in Title 28, United States Code, Section 1961) shall accrue on the unpaid balance through the date of payment, unless the Office, in its sole discretion, chooses to reinstate prosecution pursuant to paragraphs 10 and 11 below.

## Obligation to Cooperate

5. GM has cooperated with this Office's criminal investigation and agrees to cooperate fully and actively with the Office, the Federal Bureau of Investigation ("FBI"), the Department of Transportation ("DOT"), the Office of the Special Inspector General for the Troubled Asset Relief Program ("SIGTARP"), the National Highway Traffic Safety Administration ("NHTSA"), and any other agency of the government designated by the Office

2

Anton R. Valukas, Esq.
Reid J. Schar, Esq.
Anthony S. Barkow, Esq.
September 16, 2015

regarding any matter relating to the Office's investigation about which GM has knowledge or information.

6. It is understood that GM shall (a) truthfully and completely disclose all information with respect to the activities of itself and its subsidiaries, as well as with respect to the activities of officers, agents, and employees of GM and its subsidiaries, concerning all matters about which the Office inquires of it, which information can be used for any purpose; (b) cooperate fully with the Office, FBI, DOT, SIGTARP, NHTSA, and any other law enforcement agency designated by the Office; (c) attend all meetings at which the Office requests its presence and use its best efforts to secure the attendance and truthful statements or testimony of any past or current officers, agents, or employees of GM or its subsidiaries at any meeting or interview or before the grand jury or at trial or at any other court proceeding; (d) provide to the Office upon request any document, record, or other tangible evidence relating to matters about which the Office or any designated law enforcement agency inquires of it; (e) assemble, organize, and provide in a responsive and prompt fashion, and upon request, on an expedited schedule, all documents, records, information and other evidence in GM's possession, custody or control as may be requested by the Office, FBI, DOT, SIGTARP, NHTSA, or designated law enforcement agency; (f) volunteer and provide to the Office any information and documents that come to GM's attention that may be relevant to the Office's investigation of this matter, any issue related to the Statement of Facts, and any issue that would fall within the scope of the duties of the independent monitor (the "Monitor") as set forth in paragraph 15; (g) provide testimony or information necessary to identify or establish the original location, authenticity, or other basis for admission into evidence of documents or physical evidence in any criminal or other proceeding as requested by the Office, FBI, DOT, SIGTARP, NHTSA, or designated law enforcement agency, including but not limited to information and testimony concerning the conduct set forth in the Information and Statement of Facts; (h) bring to the Office's attention all criminal conduct by or criminal investigations of GM or any of its agents or employees acting within the scope of their employment related to violations of the federal laws of the United States, as to which GM's Board of Directors, senior management, or United States legal and compliance personnel are aware; (i) bring to the Office's attention any administrative or regulatory proceeding or civil action brought by or investigation conducted by any U.S. governmental authority that alleges fraud by GM; and (j) commit no crimes whatsoever under the federal laws of the United States subsequent to the execution of this Agreement. In the event the Office determines that information it receives from GM pursuant to this provision should be shared with DOT and/or NHTSA, the Office may request that GM provide such information to DOT and/or NHTSA directly. GM will submit such information to DOT and/or NHTSA consistent with the regulatory provisions related to the protection of confidential business information contained in 49 C.F.R. Part 512 and 49 C.F.R. Part 7. Nothing in this Agreement shall be construed to require GM to provide any information, documents or testimony protected by the attorney-client privilege, work product doctrine, or any other applicable privilege.

7. GM agrees that its obligations pursuant to this Agreement, which shall commence upon the signing of this Agreement, will continue for three years from the date of the

3

Anton R Valukas, Esq.
Reid J. Schar, Esq.
Anthony S. Barkow, Esq.
September 16, 2015

Court's acceptance of this Agreement, unless otherwise extended pursuant to paragraph 12 below. GM's obligation to cooperate is not intended to apply in the event that a prosecution against GM by this Office is pursued and not deferred.

### Deferral of Prosecution

8. In consideration of GM's entry into this Agreement, the actions it has taken to date to demonstrate acceptance and acknowledgement of responsibility for its conduct (including, among other things, conducting a swift and robust internal investigation, furnishing this Office with a continuous flow of unvarnished facts gathered during the course of that internal investigation, voluntarily providing, without prompting, certain documents and information otherwise protected by the attorney-client privilege, providing timely and meaningful cooperation more generally in the investigation conducted by this Office, terminating wrongdoers, and establishing a full and independent victim compensation program that has to date paid out hundreds of millions of dollars in awards), and its commitment to: (a) continue to accept and acknowledge responsibility for its conduct; (b) continue to cooperate with the Office, FBI, DOT, SIGTARP, NHTSA, and any other law enforcement agency designated by this Office; (c) make the payments specified in this Agreement; (d) comply with Federal criminal laws; and (e) otherwise comply with all of the terms of this Agreement, the Office shall recommend to the Court that prosecution of GM on the Information be deferred for three years from the date of the signing of this Agreement. GM shall expressly waive indictment and all rights to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, Title 18, United States Code, Section 3161, Federal Rule of Criminal Procedure 48(b), and any applicable Local Rules of the United States District Court for the Southern District of New York for the period during which this Agreement is in effect. GM shall expressly waive any objection to venue with respect to any charges arising out of the conduct described in the Statement of Facts and shall expressly consent to the filing of the Information in the Southern District of New York.

9. It is understood that this Office cannot, and does not, agree not to prosecute GM for criminal tax violations. However, if GM fully complies with the terms of this Agreement, no testimony given or other information provided by GM (or any other information directly or indirectly derived therefrom) will be used against GM in any criminal tax prosecution. In addition, the Office agrees that, if GM is in compliance with all of its obligations under this Agreement, the Office will, within thirty (30) days after the expiration of the period of deferral (including any extensions thereof), seek dismissal with prejudice as to GM of the Information filed against GM pursuant to this Agreement. Except in the event of a violation by GM of any term of this Agreement, the Office will bring no additional charges against GM, except for criminal tax violations, relating to its conduct as described in the admitted Statement of Facts. This Agreement does not provide any protection against prosecution for any crimes except as set forth above and does not apply to any individual or entity other than GM and its subsidiaries. GM and the Office understand that the Agreement to defer prosecution of GM must be approved by the Court, in accordance with 18 U.S.C. § 3161(h)(2). Should the Court decline to approve the Agreement to defer prosecution for any reason, both the Office and GM are released from any

4

Anton R. Valukas, Esq.
Reid J. Schar, Esq.
Anthony S. Barkow, Esq.
September 16, 2015

obligation imposed upon them by this Agreement, and this Agreement shall be null and void, except for the tolling provision set forth in paragraph 10.

10. It is further understood that should the Office in its sole discretion determine based on facts learned subsequent to the execution of this Agreement that GM has: (a) knowingly given false, incomplete or misleading information to the Office, FBI, DOT, SIGTARP, or NHTSA, either during the term of this Agreement or in connection with the Office's investigation of the conduct described in the Information and Statement of Facts, (b) committed any crime under the federal laws of the United States subsequent to the execution of this Agreement, or (c) otherwise violated any provision of this Agreement, GM shall, in the Office's sole discretion, thereafter be subject to prosecution for any federal criminal violation of which the Office has knowledge, including but not limited to a prosecution based on the Information, the Statement of Facts, or the conduct described therein. Any such prosecution may be premised on any information provided by or on behalf of GM to the Office and/or FBI, DOT, SIGTARP, or NHTSA at any time. In any such prosecution, no charge would be time-barred provided that such prosecution is brought within the applicable statute of limitations period, excluding (a) any period subject to any prior or existing tolling agreement between the Office and GM and (b) the period from the execution of this Agreement until its termination. GM agrees to toll, and exclude from any calculation of time, the running of the applicable criminal statute of limitations for the length of this Agreement starting from the date of the execution of this Agreement and including any extension of the period of deferral of prosecution pursuant to paragraph 12 below. By this Agreement, GM expressly intends to and hereby does waive its rights in the foregoing respects, including any right to make a claim premised on the statute of limitations, as well as any constitutional, statutory, or other claim concerning pre-indictment delay. Such waivers are knowing, voluntary, and in express reliance on the advice of GM's counsel.

11. It is further agreed that in the event that the Office, in its sole discretion, determines that GM has violated any provision of this Agreement, including by failure to meet its obligations under this Agreement: (a) all statements made by or on behalf of GM to the Office, FBI, DOT, SIGTARP, and/or NHTSA, including but not limited to the Statement of Facts, or any testimony given by GM or by any agent of GM before a grand jury, or elsewhere, whether before or after the date of this Agreement, or any leads from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings hereinafter brought by the Office against GM; and (b) GM shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by or on behalf of GM before or after the date of this Agreement, or any leads derived therefrom, should be suppressed or otherwise excluded from evidence. It is the intent of this Agreement to waive any and all rights in the foregoing respects.

12. GM agrees that, in the event that the Office determines during the period of deferral of prosecution described in paragraph 8 above (or any extensions thereof) that GM has violated any provision of this Agreement, an extension of the period of deferral of prosecution

5

Anton R Valukas, Esq.
Reid J. Schar, Esq.
Anthony S. Barkow, Esq.
September 16, 2015

may be imposed in the sole discretion of the Office, up to an additional one year, but in no event shall the total term of the deferral-of-prosecution period of this Agreement exceed four (4) years.

13. GM, having truthfully admitted to the facts in the Statement of Facts, agrees that it shall not, through its attorneys, agents, or employees, make any statement, in litigation or otherwise, contradicting the Statement of Facts or its representations in this Agreement. Consistent with this provision, GM may raise defenses and/or assert affirmative claims and defenses in any proceedings brought by private and/or public parties as long as doing so does not contradict the Statement of Facts or such representations. Any such contradictory statement by GM, its present or future attorneys, agents, or employees shall constitute a violation of this Agreement and GM thereafter shall be subject to prosecution as specified in paragraphs 8 through 11, above, or the deferral-of-prosecution period shall be extended pursuant to paragraph 12, above. The decision as to whether any such contradictory statement will be imputed to GM for the purpose of determining whether GM has violated this Agreement shall be within the sole discretion of the Office. Upon the Office's notifying GM of any such contradictory statement, GM may avoid a finding of violation of this Agreement by repudiating such statement both to the recipient of such statement and to the Office within two business days after having been provided notice by the Office. GM consents to the public release by the Office, in its sole discretion, of any such repudiation. Nothing in this Agreement is meant to affect the obligation of GM or its officers, directors, agents or employees to testify truthfully to the best of their personal knowledge and belief in any proceeding.

14. GM agrees that it is within the Office's sole discretion to choose, in the event of a violation, the remedies contained in paragraphs 10 and 11 above, or instead to choose to extend the period of deferral of prosecution pursuant to paragraph 12. GM understands and agrees that the exercise of the Office's discretion under this Agreement is unreviewable by any court. Should the Office determine that GM has violated this Agreement, the Office shall provide notice to GM of that determination and provide GM with an opportunity to make a presentation to the Office to demonstrate that no violation occurred, or, to the extent applicable, that the violation should not result in the exercise of those remedies or in an extension of the period of deferral of prosecution, including because the violation has been cured by GM.

### Independent Monitor

15. GM agrees to retain a Monitor upon selection by the Office and approval by the Office of the Deputy Attorney General, whose powers, rights and responsibilities shall be as set forth below.

(a). <u>Jurisdiction, Powers, and Oversight Authority</u>. To address issues related to the Statement of Facts and Information, the Monitor shall have the authorities and duties defined below. The scope of the Monitor's authority is to review and assess GM's policies, practices or procedures as set forth below, and is not intended to include substantive review of the correctness of any of GM's prior, present, or future decisions relating to compliance with NHTSA's regulatory regime, including the National Traffic and Motor Vehicle

6

Anton R. Valukas, Esq.
Reid J. Schar, Esq.
Anthony S. Barkow, Esq.
September 16, 2015

Safety Act, its implementing regulations, and related policies. Nor is it intended to supplant NHTSA's authority over decisions related to motor vehicle safety. Except as expressly set forth below, the authority granted below shall not include the authority to exercise oversight, or to participate in, decisions by GM about product offerings, decisions relating to product development, engineering of GM vehicles, capital allocation, and investment decisions.

(1). Review and assess the efficacy of GM's current policies, practices, and procedures in ensuring that GM corrects prior statements and assurances concerning motor vehicle safety;

(2). Review and assess the effectiveness of GM's current policies, practices, or procedures for sharing allegations and engineering analyses associated with lawsuits and not-in-suit matters with those responsible for recall decisions;

(3). Review and assess GM's current compliance with its stated recall processes; and

(4). Review and assess the adequacy of GM's current procedures for addressing known defects in certified pre-owned vehicles.

It is the intent of this Agreement that the provisions regarding the Monitor's jurisdiction, powers, and oversight authority and duties be broadly construed, subject to the following limitation: the Monitor's responsibilities shall be limited to GM's activities in the United States, and to the extent the Monitor seeks information outside the United States, compliance with such requests shall be consistent with the applicable legal principles in that jurisdiction. GM shall adopt all recommendations submitted by the Monitor unless GM objects to any recommendation and the Office agrees that adoption of such recommendation should not be required.

(b). <u>Access to Information</u>. The Monitor shall have the authority to take such reasonable steps, in the Monitor's view, as necessary to be fully informed about those operations of GM within or relating to his or her jurisdiction. To that end, the Monitor shall have:

(1). Access to, and the right to make copies of, any and all non-privileged books, records, accounts, correspondence, files, and any and all other documents or electronic records, including e-mails, of GM and its subsidiaries, and of officers, agents, and employees of GM and its subsidiaries, within or relating to his or her jurisdiction that are located in the United States; and

(2). The right to interview any officer, employee, agent, or consultant of GM conducting business in or present in the United States and to participate in any meeting in the United States concerning any matter within or relating to the Monitor's jurisdiction.

7

Anton R Valukas, Esq.
Reid J. Schar, Esq.
Anthony S. Barkow, Esq.
September 16, 2015

To the extent that the Monitor seeks access to information contained within privileged documents or materials, GM shall use its best efforts to provide the Monitor with the information without compromising the asserted privilege.

   (c). <u>Confidentiality</u>.

    (1). The Monitor shall maintain the confidentiality of any non-public information entrusted or made available to the Monitor. The Monitor shall share such information only with the Office, FBI and SIGTARP. The Monitor may also determine that such information should be shared with DOT and/or NHTSA. In the event of such a determination, the Monitor may request that GM provide the subject information directly to DOT and/or NHTSA. GM will submit such information to DOT or NHTSA consistent with the regulatory provisions related to the protection of confidential business information contained in 49 C.F.R. Part 512 and 49 C.F.R. Part 7.

    (2). The Monitor shall sign a non-disclosure agreement with GM prohibiting disclosure of information received from GM to anyone other than to the Office, FBI, DOT, SIGTARP or NHTSA, and anyone hired by the Monitor. Within thirty days after the end of the Monitor's term, the Monitor shall either return anything obtained from GM, or certify that such information has been destroyed. Anyone hired by the Monitor shall also sign a non-disclosure agreement with similar return or destruction requirements as set forth in this sub-paragraph.

   (d). <u>Hiring Authority</u>. The Monitor shall have the authority to employ legal counsel, consultants, investigators, experts, and any other personnel necessary to assist in the proper discharge of the Monitor's duties.

   (e). <u>Implementing Authority</u>. The Monitor shall have the authority to take any other actions in the United States that are necessary to effectuate the Monitor's oversight and monitoring responsibilities.

   (f). <u>Miscellaneous Provisions</u>.

    (1). <u>Term</u>. The Monitor's authority set forth herein shall extend for a period of three years from the commencement of the Monitor's duties, except that (a) in the event the Office determines during the period of the Monitorship (or any extensions thereof) that GM has violated any provision of this Agreement, an extension of the period of the Monitorship may be imposed in the sole discretion of the Office, up to an additional one-year extension, but in no event shall the total term of the Monitorship exceed the term of the Agreement; and (b) in the event the Office, in its sole discretion, determines during the period of the Monitorship that the employment of a Monitor is no longer necessary to carry out the purposes of this Agreement, the Office may shorten the period of the Monitorship.

8

Anton R. Valukas, Esq.
Reid J. Schar, Esq.
Anthony S. Barkow, Esq.
September 16, 2015

(2). <u>Selection of the Monitor</u>. The Office shall consult with GM, including soliciting nominations from GM, using its best efforts to select and appoint a mutually acceptable Monitor (and any replacement Monitors, if required) as promptly as possible. In the event that the Office is unable to select a Monitor acceptable to GM, the Office shall have the sole right to select a monitor (and any replacement Monitors, if required). To ensure the integrity of the Monitorship, the Monitor must be independent and objective and the following persons shall not be eligible as either a Monitor or an agent, consultant or employee of the Monitor: (a) any person previously employed by GM; or (b) any person who has been directly adverse to GM in any proceeding. The selection of the Monitor must be approved by the Deputy Attorney General.

(3). <u>Notice regarding the Monitor; Monitor's Authority to Act on Information received from Employees; No Penalty for Reporting</u>. GM shall establish an independent, toll-free answering service to facilitate communication anonymously or otherwise with the Monitor. Within 10 days of the commencement of the Monitor's duties, GM shall advise its employees of the appointment of the Monitor, the Monitor's powers and duties as set forth in this Agreement, the toll-free number established for contacting the Monitor, and email and mail addresses designated by the Monitor. Such notice shall inform employees that they may communicate with the Monitor anonymously or otherwise, and that no agent, consultant, or employee of GM shall be penalized in any way for providing information to the Monitor. In addition, such notice shall direct that, if an employee is aware of any violation of any law or any unethical conduct that has not been reported to an appropriate federal, state or municipal agency, the employee is obligated to report such violation or conduct to GM's compliance office in the United States or the Monitor. The Monitor shall have access to all communications made using this toll-free number. The Monitor has the sole discretion to determine whether the toll-free number is sufficient to permit confidential and/or anonymous communications or whether the establishment of an additional toll-free number is required. Further, the Monitor shall inform GM of communications made to the Monitor regarding motor vehicle safety so that GM can address any allegations consistent with its Code of Conduct and related policies and procedures.

(4). <u>Reports to the Office</u>. The Monitor shall keep records of his or her activities, including copies of all correspondence and telephone logs, as well as records relating to actions taken in response to correspondence or telephone calls. If potentially illegal or unethical conduct is reported to the Monitor, the Monitor may, at his or her option, conduct an investigation, and/or refer the matter to the Office. The Monitor should, at his or her option, refer any potentially illegal or unethical conduct to GM's compliance office. The Monitor may report to the Office whenever the Monitor deems fit but, in any event, shall file a written report not less often than every four months regarding: the Monitor's activities; whether GM is complying with the terms of this Agreement; and any changes that are necessary to foster GM's compliance with any applicable laws, regulations and standards related to the Monitor's jurisdiction as set forth in paragraph 15(a). Such periodic written reports are to be provided to GM and the Office. The Office may, in its sole discretion, provide to FBI and SIGTARP all or part of any such periodic written report, or other information provided to the Office by the Monitor. The Office may also

9

Anton R Valukas, Esq.
Reid J. Schar, Esq.
Anthony S. Barkow, Esq.
September 16, 2015

determine that all or part of any such periodic report, or other information provided to the Office by the Monitor, be provided to DOT and/or NHTSA. In the event of such a determination, the Office may request that GM transmit such report, part of a report, and/or non-public information to DOT and/or NHTSA directly. GM will submit such report, part of a report, and/or non-public information to DOT and/or NHTSA consistent with the regulatory provisions related to the protection of confidential business information contained in 49 C.F.R. Part 512 and 49 C.F.R. Part 7. GM may provide all or part of any periodic written reports to NHTSA or other federal agencies or governmental entities. Should the Monitor determine that it appears that GM has violated any law, has violated any provision of this Agreement, or has engaged in any conduct that could warrant the modification of his or her jurisdiction, the Monitor shall promptly notify the Office, and when appropriate, GM.

(5). <u>Cooperation with the Monitor</u>. GM and all of its officers, directors, employees, agents, and consultants, and all of the officers, directors, employees, agents, and consultants of GM's subsidiaries shall have an affirmative duty to cooperate with and assist the Monitor in the execution of his or her duties provided in this Agreement and shall inform the Monitor of any non-privileged information that may relate to the Monitor's duties or lead to information that relates to his or her duties. Failure of any GM officer, director, employee, or agent to cooperate with the Monitor may, in the sole discretion of the Monitor, serve as a basis for the Monitor to recommend dismissal or other disciplinary action.

(6). <u>Compensation and Expenses</u>. Although the Monitor shall operate under the supervision of the Office, the compensation and expenses of the Monitor, and of the persons hired under his or her authority, shall be paid by GM. The Monitor, and any persons hired by the Monitor, shall be compensated in accordance with their respective typical hourly rates. GM shall pay bills for compensation and expenses promptly, and in any event within 30 days. In addition, within one week after the selection of the Monitor, GM shall make available office space, telephone service and clerical assistance sufficient for the Monitor to carry out his or her duties.

(7). <u>Indemnification</u>. GM shall provide an appropriate indemnification agreement to the Monitor with respect to any claims arising out of the performance of the Monitor's duties.

(8). <u>No Affiliation</u>. The Monitor is not, and shall not be treated for any purpose, as an officer, employee, agent, or affiliate of GM.

<h3 style="text-align:center">Limits of this Agreement</h3>

16. It is understood that this Agreement is binding on the Office but does not bind any other Federal agencies, any state or local law enforcement agencies, any licensing authorities, or any regulatory authorities. However, if requested by GM or its attorneys, the Office will bring to the attention of any such agencies, including but not limited to any regulators,

10

Anton R Valukas, Esq.
Reid J. Schar, Esq.
Anthony S. Barkow, Esq.
September 16, 2015

as applicable, this Agreement, the cooperation of GM, and GM's compliance with its obligations under this Agreement.

## Public Filing

17.   GM and the Office agree that, upon the submission of this Agreement (including the Statement of Facts and other attachments) to the Court, this Agreement and its attachments shall be filed publicly in the proceedings in the United States District Court for the Southern District of New York.

18.   The parties understand that this Agreement reflects the unique facts of this case and is not intended as precedent for other cases.

## Execution in Counterparts

19.   This Agreement may be executed in one or more counterparts, each of which shall be considered effective as an original signature.

Anton R. Valukas, Esq.
Reid J. Schar, Esq.
Anthony S. Barkow, Esq.
September 16, 2015

### Integration Clause

20. This Agreement sets forth all the terms of the Deferred Prosecution Agreement between GM and the Office. No modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Office, GM's attorneys, and a duly authorized representative of GM.

PREET BHARARA
United States Attorney
Southern District of New York

By: *[signatures]*
BONNIE JONAS
SARAH EDDY MCCALLUM
EDWARD A. IMPERATORE
Assistant United States Attorneys

*[signature]*
DANIEL L. STEIN
Chief, Criminal Division

Accepted and agreed to:

*[signature]*
Craig Glidden, Esq.

General Counsel and Chief Legal Officer,
General Motors Company

*[signature]*
Anton R. Valukas, Esq.
Reid J. Schar, Esq.
Anthony S. Barkow, Esq.

Attorneys for General Motors Company

12