UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

BDG GOTHAM RESIDENTIAL, LLC, and ZDG, LLC,

                Plaintiffs,

     v.                                                                  No. 19-cv-6386 (CM)

WESTERN WATERPROOFING COMPANY, INC.
d/b/a WESTERN SPECIALTY CONTRACTORS
and WESTERN SURETY COMPANY,

                Defendants,
------------------------------------------------------------x

**DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT WESTERN WATERPROOFING COMPANY, INC.'S MOTION *IN LIMINE* TO RESTRICT OR EXCLUDE THE USE OF THE NOVEMBER 2018 DEFERRED PROSECUTION AGREEMENT AND STATEMENT OF FACTS**

McMahon, J.:

Defendant Western Waterproofing Company, Inc. ("Western") moves *in limine* to exclude the use of a paragraph from a Deferred Prosecution Agreement ("DPA") that Western entered into with the New York County District Attorney's Office ("DANY") on November 8, 2018, as well as to bar the use of certain statements in the Statement of Facts ("SOF") that was attached to the DPA. (*See* Dkt. No. 129).

BDG Gotham Residential, LLC ("Gotham") and ZDG, LLC ("ZDG," together "Plaintiffs") oppose the motion. (*See* Dkt. No. 136).

For the reasons that follow, Western's motion is DENIED.

## BACKGROUND

This action arises from a construction accident that occurred in June 2018 in Manhattan, in

1

which two ironworkers were grievously injured (the "Incident").

BDG Gotham Residential, LLC is the owner of the land at 158 East 126th Street, New York, New York where the Incident occurred (the "Property"). ZDG, LLC is the construction manager engaged to build the building on the Property when the Incident occurred (the "Project").

In September 2016, Gotham contracted with ZDG, as construction manager, to build an eleven-story mixed-use building on the Property at 158 East 126th Street, New York, New York.

In April 2017, ZDG subcontracted with Western to install a curtainwall façade for the building. Western's subcontract agreement with ZDG (the "Subcontract") required Western to "comply with all applicable city, state and federal laws, rules, regulations and codes of any governmental authority having jurisdiction over the [construction project]." (Dkt. No. 29, ¶¶ 24-42).

On June 25, 2018, while performing under the Subcontract, Western used a Jekko MPK20 Minipicker ("the Jekko") to lift façade panels into place. While lifting a panel into place, the Jekko tipped over, damaging certain property and injuring the two ironworkers, who were employed by Western.

Following the Incident, both workers filed personal injury actions against Gotham and ZDG in New York state court seeking damages for their injuries. *See Juanita Jackson, as Guardian of Christopher Jackson, an Incapacitated Person v. BDG Gotham Residential, LLC and ZDG, LLC*, Index No. 153339/2019 (N.Y. Sup. Ct. New York Cnty.); *Jorge Delgado and Yahaira Delgado v. BDG Gotham Residential, LLC and ZDG, LLC*, Index No. 28195/2018E (N.Y. Sup. Ct. Bronx Cnty.).

In November 2018, a grand jury sitting in New York County indicted Timothy Braico and Terrence Edwards, two Western employees, for assault and reckless endangerment related to the

Incident. *See Jackson*, No. 153339/2019, at Dkt. Nos. 14, 59; *see People v. Timothy Braico and Terrence Edwards*, Indictment No. 3995/2018.

Also in November 2018, the DANY entered into the DPA with Western, by virtue of which Western's prosecution for assault in the second degree and reckless endangerment in the second degree was deferred for 36 months. (Dkt. No. 119, ¶¶ 1, 5, 12). In paragraph 4 of the DPA, Western acknowledged and accepted "responsibility for the conduct of its former senior branch manager, Timothy Braico and curtain wall superintendent Terrence Edwards, with regard to the untethered, overloaded use of a Jekko MPK20W+ mini crane, by an uncertified operator, [. . .] in violation of DOB and applicable safety rules, and *the matters set forth in the Statement of Facts*." (*Id.* ¶ 4) (emphasis added).

The DPA expressly prohibited Western from making any statement that contradicted any fact that was set forth in the attached SOF:

> [Western] agrees that it shall not, through its attorneys, agents, officers or employees, *make any public statement, in litigation or otherwise, contradicting the facts set forth in the Statement of Facts.* Any such contradictory statement by [Western], its present or future attorneys, agents, officers, or employees shall constitute a breach of this Agreement, and subject to cure as hereinafter provided, [Western] thereafter shall be subject to prosecution. [ . . . ].

(*Id.* ¶ 15) (emphasis added). In the event Western breached any provision of the DPA – including paragraph 15 – both the DPA and "all statements set forth in the [SOF]" were to be admissible in criminal proceedings against Western as statements whose truthfulness and accuracy Western had acknowledged in order to obtain the benefit of deferred prosecution. (*Id.* ¶ 14(a)).

The first paragraph of the SOF states: "Western Waterproofing Company Inc. . . . a company registered to do business in the State of New York, by its undersigned attorneys, pursuant to authority granted by its owners, and the [DANY] hereby stipulate and agree that the following facts are true *or otherwise rely on the investigative determinations made by DANY* to which

3

Western Specialty Contractors lacks direct knowledge." (Dkt. No. 119, at Attachment A) (emphasis added).

On June 4, 2019, Gotham and ZDG filed this action against Western and its surety, Western Surety Company, in the Supreme Court of the State of New York, County of New York, for breach of contract, negligence and gross negligence, and seeking damages in excess of $37 million. The Amended Complaint alleges, *inter alia*, that "Western, through its breaches of the Subcontract and its negligent, grossly negligent, or reckless acts and omissions, set into motion a chain of events that resulted in the abrupt cataclysmic occurrences of June 25, 2018, serious physical injury to Christopher Jackson and Jorge Delgado, physical damage to the Premises and the Project (including loss of use), and extensive cost overruns and delays." (Dkt. No. 29, ¶41). The lawsuit was removed to this Court on July 10, 2019.[1]

Western answered the complaint in December 2020. (Dkt. No. 53). The original presiding judge, The Honorable Alison Nathan, entered a scheduling order and case management plan in January 2021 (Dkt. No. 59), and sent the case to The Honorable Barbara Moses, U.S.M.J., for general pretrial management a year later, in February 2022. (*See* Dkt. No. 91). In April 2022, the parties requested additional time to complete discovery, which was granted. (Dkt. No. 100). I inherited this case from Judge Nathan in May 2022, after she was confirmed to the Second Circuit.

Thereafter, a dispute arose between the parties regarding the extent to which the DPA and SOF could be used in this litigation at deposition and/or at trial. Judge Moses held multiple conferences to try to resolve this dispute. (*See* Dkt. Nos. 115, 126). At Judge Moses' suggestion, Plaintiffs proposed that the parties enter into a stipulation according to which Western would

---

[1] On April 22, 2020, Western filed an insurance coverage dispute in this court in which it asserts breach of contract and declaratory judgment claims against several insurance companies and breach of contract claims against Gotham and ZDG (the "insurance coverage action"). *See* Related Case No. 20-cv-3199. The insurance coverage action is also pending before this Court.

4

stipulate to a "modified SOF," one that omitted any reference to the DANY or to any criminal investigation, as well as any descriptions of emergency medical response, treatment, and severity of injuries to the Western employees injured in the incident. (*See* Dkt. No. 136, at 5; *and see* Dkt. Nos. 133, 135-4, 135-5). Plaintiffs agreed that references to the severity of the workers' injuries would be prejudicial. (Dkt. No. 136, at 6). The proposed stipulation also contemplated several other revisions to the original language of the SOF, including:

- A revision to paragraph 10 to attach a copy of the email referenced in that paragraph rather than to paraphrase that email (a suggestion proposed by Judge Moses) (*id.*); and

- The addition of a new paragraph 17, tracking the substance of paragraph 4 of the DPA (*see supra* at page 3); namely, that Western acknowledged and accepted responsibility for the conduct of Timothy Braico and Terrance Edwards in connection with the accident. (*Id.*). Plaintiffs' proposed paragraph 17 reads as follows: "Western Specialty Contractors has acknowledged and accepted responsibility for the conduct of its former senior branch manager, Timothy Braico and curtainwall superintendent Terrance Edwards, with regard to the untethered overloaded use of a Jekko MPK20W+ mini crane, by an uncertified operator, at the Gotham Residential Project construction site, in violation of DOB and applicable safety rules." (Dkt. No. 135-2).

Western did not and does not agree to the Plaintiffs' revised, proposed stipulation. It contends that no portion of the DPA itself, including paragraph 4, should be admitted into evidence and that any revised SOF used in this lawsuit should contain no reference to it. And while Western concedes that the SOF is admissible at least in part, it objects to the admissibility of certain paragraphs of the SOF, as discussed below.

As "the parties' impasse threaten[ed] both to complicate and to multiply discovery

proceedings," Judge Moses and I consulted about "the most efficient way of resolving that impasse." (Dkt. No. 126). We concluded that the parties should make a motion *in limine* and that this court should resolve the evidentiary issue now, rather than abide the close of discovery and trial. (*Id.*).

Western thereafter filed a motion *in limine* to bar the admissibility of any portion of the DPA or the attached SOF.

## DISCUSSION

### A. Paragraph 4 of the DPA is Admissible under FRE 801(d)(2) as an Opposing Party Admission.

The Plaintiffs' proposed stipulated SOF contains one paragraph – paragraph 17 – that is drawn directly from paragraph 4 of the DPA. Specifically, Plaintiffs seek to incorporate the first sentence of paragraph 4, in which Western "acknowledges and accepts responsibility for the conduct of its former senior branch manager, Timothy Braico and curtain wall superintendent Terrence Edwards, with regard to the untethered, overloaded use of a Jekko MPK20W+ mini crane, by an uncertified operator, at the Gotham Residential Project construction site, in violation of DOB and applicable safety rules . . ." (*See* Dkt. No. 119, ¶4; Dkt. No. 135-2). This is the only portion of the DPA that Plaintiffs seek to admit into evidence, whether as part of a revised SOF or otherwise. Moreover, Plaintiffs do not seek to alert the jury to the fact that Western agreed to this statement in the context of a criminal investigation and possible prosecution.

Western argues that this sentence is not admissible because the DPA qualifies as a settlement agreement under Rule 408 of the Federal Rules of Evidence ("FRE") and so cannot be offered into evidence to prove its liability. Plaintiffs say not so; this statement is not an offer of settlement or the compromise of "the claim"; it is simply a party admission and as such it is under FRE 801(d)(2)(A). (*See* Dkt. No. 136, at 9).

6

FRE 408(a) provides as follows:

**(a) Prohibited Uses.** Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

 **(1)** furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and

 **(2)** conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

The rule by its plain terms is designed to facilitate the settlement of lawsuits by shielding the fact of settlement negotiations from the trier of fact, who might draw the wrong conclusion from the fact that negotiations were entertained.

Western's argument that FRE 408 bars the admission of its acknowledgement of responsibility in the DPA fails. The Second Circuit has indicated that FRE 408 only bars the admission of evidence about the "settlement of a civil suit." *See U.S. v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981). The Court of Appeals explains that the purpose of FRE 408 is to encourage civil settlement and "avoid[] wasteful litigation" – neither of which as anything to do with the resolution of criminal matters. *See Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 510 (2d Cir. 1989). As my former colleague Judge Sweet once explained, FRE 408 "exists to protect a party that settles one claim from having that settlement used against it to establish liability (or the extent of liability) of that same party *in another lawsuit for the same claim.*" *SEC v. Pentagon Capital Mgmt. PLC*, No. 08-cv-3324, 2010 WL 985205, at *4 (S.D.N.Y. Mar. 17, 2010)) (emphasis added). Obviously, a criminal case against Western is not "another lawsuit for the same claim" as this civil action; Plaintiffs here are suing Western for breach of contract, and the torts of negligence and gross negligence, while the DANY was about to indict Western for the crimes of

assault and reckless endangerment. The fact that the two matters arose out of the same incident does not make the "claims" identical.

Moreover, a deferred prosecution agreement – an agreement by the Government not to pursue a criminal case as long as the potential criminal defendant abides by an agreed set of conditions, *see e.g., United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 129 (2d Cir. 2017) – is simply not the same thing as the settlement of a civil action. Criminal cases are not "settled." Most do not go to trial, but end with a plea – but we don't call that a "settlement." And a few cases end without either a plea or a verdict – sometimes because the Government nolles them, other times because the prosecutor moves to dismiss in the interests of justice – and sometimes because the parties enter into deferred prosecution agreements like this one. But those are not "settlements" as the term is commonly understood by courts and litigators. Civil cases, by contrast, are "settled" if they do not go to trial. The term "settlement" has no commonly understood meaning in the context of criminal litigation.

The cases cited by Western in support of its position that the DPA is a settlement are inapposite. Western points to cases where district courts concluded that civil consent decrees in Securities and Exchange ("SEC") enforcement actions should not be admitted pursuant to FRE 408, if they were being offered to establish the liability of the party to the consent decree. *See Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 00-cv-2838, 2008 U.S. Dist. LEXIS 112503, at *12 (N.D.Ga. April 23, 2008). A civil consent decree is similar to a DPA in that it is a mechanism used by the Government by which the Government declines to pursue an action against the other party in exchange for the other party's agreement to pay certain penalties and/or undertake certain obligations. But a consent decree is used to *settle a civil enforcement action* – a civil lawsuit. It does not resolve any criminal matter arising out of the same facts. A civil consent

decree thus falls squarely within the parameters of Rule 408; while a consent decree does constitute a civil settlement and FRE 408 would apply, the same cannot be said for a DPA.

Western also cites to a District of South Carolina case that barred the admission of a DPA under FRE 408. But that case is not only not binding authority, it is unpersuasive. In *Accident Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 16-cv-02621, 2019 WL 2566950 (D.S.C. June 21, 2019), the district court concluded that a large number of different documents, including a DPA, two civil consent decrees (one with the SEC and one with the Office of the Comptroller of Currency) and other "government investigation documents" should not be admitted into evidence. *Id.* at *1. The court discussed all the documents as a group and did not distinguish the DPA from the civil consent orders in any way. Moreover, the only cases on which the court relied were cases discussing the settlement of civil actions. *See id.* at *3. The court never considered or analyzed whether a DPA constituted a "settlement" or whether criminal admissions that were made other than in the context of a plea fell within the meaning of the term a "compromise offer" as used in FRE 408. For these reasons, *Accident Ins. Co.* does not comport with Second Circuit law as discussed above, and I will not follow it.

The Court turns now to Western's arguments that the sentence in paragraph 4 of the DPA that Plaintiffs seek to admit is not relevant under FRE 401 and 402, is unduly prejudicial under FRE 403, and is hearsay under FRE 801.

Plaintiffs are correct that paragraph 4 of the DPA is highly relevant to Plaintiffs' theories of liability, including gross negligence: Western's making itself a party to an agreement that contains the statement of responsibility in paragraph 4 "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." *See* FRE 401. In paragraph 4, Western acknowledged and accepted responsibility for

9

the actions of its agents/employees – the very actions that allegedly caused injury to the plaintiffs under tort and contract theories of recovery. (*See* Dkt. No. 119, ¶4). The first sentence of paragraph 4 of the DPA qualifies as a party admission and so is not hearsay, because it would be offered "against an opposing party and: . . . was made by the party in an individual or representative capacity . . ." FRE 801(d)(2)(A). The notion that this admission would not be consequential in determining the outcome of this lawsuit is absurd (and is belied by Western's strenuous efforts to keep it out of evidence). And relevant evidence is always admissible unless proscribed by, in this instance, some other rule of evidence. *See* FRE 402.

The only such rule cited by Western is FRE 403, arguing that its admission would be unduly prejudicial. To support this theory, Western cites to a decision by my colleague Judge Furman in *In re General Motors LLC Ignition Switch Litigation*, No. 14-MD-2543 (JMF), 2015 WL 9165341 (S.D.N.Y. Dec. 16, 2015). There, Judge Furman declined to admit a DPA under FRE 403 finding that "to the extent that [documents including the DPA] have any probative value, any such value is substantially outweighed by the dangers of, among other things, unfair prejudice, confusion of the issues, and wasted time." *Id.* at *1 (citing FRE 403). Judge Furman explained that "Introduction of . . . documents" including a DPA (but not a SOF, which Judge Furman distinguished) "could, for example, invite the jury to impermissibly base its verdict on the fact that [the defendant] was the subject of criminal proceedings." *Id.* (citing cases). He further reasoned that "if those documents were admitted, [defendant] would be compelled . . . to explain the circumstances surrounding the resolution of the criminal investigation, the DPA's various terms and conditions, and [the defendant's] agreement to pay a . . . penalty, all of which would be a sideshow to the main event." *Id.* (quotation and internal citation omitted). However, Judge Furman admitted, as party admissions, statements of fact from an associated SOF. *In re: General Motors*

*Ignition Switch Litigation*, 2015 WL 9165341, at *2 (observing that SOF accompanying the DPA "is indisputably a statement by New GM . . . and contains admissions . . . . that are highly relevant to facts of consequence at trial").

I do not know whether the DPA at issue before Judge Furman contained a promise that New GM would never make any public statements in litigation or otherwise that would "contradict" the factual findings in an associated SOF, but his reasoning in that case does not persuade here. First of all, the Plaintiffs here do not propose to admit the entire DPA; they propose to admit one sentence from the DPA, shorn of any reference to the nature of the document or the fact that it was part of a criminal proceeding. Apparently, that was not the case in Judge Furman's lawsuit. Omitting any reference to criminal proceedings solves problems that rightly troubled my colleague in the *General Motors* case. For the same reason, there would be no "sideshow" of explanations: The jury would simply be told that Western has acknowledged and accepted responsibility for the actions of its employees/agents. That is a party admission. The fact that Western felt itself forced to make the admission in order to avoid criminal liability is, as far as I am concerned, of no relevance whatever, and would not need to be explained because the jury would never hear about it.

I do not for one minute deny that the concession in paragraph 4 of the DPA is "prejudicial" to Western. But that is not the test of Rule 403. Western's admission is not "unfairly" prejudicial to Western; it is a simple acknowledgement of the truth. As long as it is admitted separate and apart from the rest of the DPA, and without any reference to criminal proceedings, it is simply and solely an admission against interest, and it will be admitted at trial.

### B. The Statements Contained in the SOF are Admissible under FRE 801(d)(2) as Opposing Party Admissions.

The rest of Western's motion concerns whether certain portions of the SOF that is attached

11

to the DPA are admissible. Western is prohibited by paragraph 15 of the DPA from "contradicting the facts set forth in the Statement of Facts" attached to the DPA, but Plaintiffs agree that certain things that appear in that SOF should not be shown to the jury in this civil action. Indeed, for the most part, the parties agree about what should and should not be admitted from the original SOF.[2] (*See* Dkt. No. 131-1).

I make the following rulings:

(1) Western is willing to stipulate that paragraphs 1, 5, 6, 9 and 15 of the original SOF can be put before the jury as they appear in that SOF. Those paragraphs are, therefore, admitted on consent.

(2) Western is willing to stipulate to the admissibility of paragraphs 2 and 4 of the SOF as long as the court makes certain "revisions to clarify the wording" (paragraphs 2 and 4). (Dkt. No. 130, at 2). Plaintiffs asks that these paragraphs should be admitted without revision. (*See* Dkt. No. 135-2; Dkt. No. 136, at 2). Frankly, Western's proposed changes to both paragraphs 2 and 4 are meaningless and do not alter anything about what is said in those paragraphs. Therefore, I deny the application to change the wording of those paragraphs, and I conclude that paragraphs 2 and 4 of the SOF should be shown to the jury exactly as they appear in the original SOF.

(3) Western argues that paragraph 3 should be admitted without any reference to the Western workers that were ultimately injured. Plaintiffs disagree because the sentence does not reference the severity or extent of the workers injuries; it only states that the employees "include[ed] ironworkers Christopher Jackson and Jorge Delgado." (*See* Dkt. No. 136, at 11; Dkt. No. 135-2). The Court finds that the inclusion of the names of the workers is not unduly prejudicial; in fact, it is cumulative, since the jury in the case will be told in a dozen different

---

[2] I gather that both sides agree to create a new "Statement of Facts" for this case, rather than use a redacted version of the SOF attached to the DPA.

ways that Messrs. Jackson and Delgado were injured when the crane fell. The paragraph is admitted.

(4) Western will stipulate to paragraph 10 with a revision suggested by Judge Moses – the addition of a reference to "the subject email" referenced in that paragraph and attachment of that email as an exhibit to the stipulated SOF. Plaintiffs do not object to Judge Moses' suggestion and it is acceptable to the Court. Paragraph 10 is admitted without objection, with the attachment, and with the addition of the following sentence at the end thereof: "A copy of the subject e-mail is attached as Exhibit A."

(5) Finally, Western argues that paragraph 13 should be stricken from the proposed SOF in its entirety as inadmissible hearsay pursuant to FRE 801 and 802. Paragraph 13 states:

> Also on or about June 22, 2018, during a meeting with Braico, Edwards and a Western Specialty Contractors engineer, the Western Specialty Contractors regional manager with authority over the Facades Division was falsely informed that Braico and Edwards were in the process of obtaining the necessary DOB permit for the Jekko mini crane.

(*See* Dkt. No. 119; *see also* Dkt. No. 131-1). Western states it is prepared to stipulate that Western did not have the necessary DOB permit to operate the Jekko mini crane as of June 25, 2018, but asserts that the reference to the conversation itself is inadmissible. The Court disagrees. Paragraph 13's statement about what Braico and Edwards told the regional manager falls within FRE 801(d)(2)(D)'s hearsay exception as a statement by Western's "agent or employee on a matter within the scope of that relationship and while it existed." It is, therefore, admissible against Western. This is a classic example of a party admission against interest. Paragraph 13 will not be stricken.

And so we come to the point of genuine contention between the parties. Western objects to the admissions of all statements and paragraphs in the SOF beginning with the phrase, "DANY's investigation has determined" on the ground that what DANY's investigation determined is

13

inadmissible hearsay under FRE 801 and 802. These statements appear in paragraph 7, 8, 11, 12, 14, and 16 of the SOF. Just to be clear, Western does not simply object to the first four words (which would never be admitted as they are in any event, since they reveal the existence of a criminal proceeding). Rather, it objects to every bit of what follows those words – which is to say, to the factual findings made by DANY. Western contends that it has never admitted the truth of what "DANY's investigation has determined;" it argues that it has merely admitted that DANY so found. Indeed, Western argues that it did not have direct knowledge of the investigation's findings, and so could not have admitted them.

Plaintiffs contend that these statements are admissible as opposing party admissions under FRE 801(d)(2). (Dkt. No. 136, at 2). They contend that Western adopted DANY's findings by (1) admitting that DANY had so found and (2) agreeing, in the DPA, not to contest the truth of these statements publicly, "in litigation" or otherwise. This, Plaintiffs contend, makes Western's agreement that DANY so found "adoptive admissions" of the content of the statements.

An adoptive admission under FRE 801(d)(2)(B) is a "statement . . . offered against an opposing party and: . . . is one the party manifested that it adopted or believed to be true." The key point for an adoptive admission, as Plaintiffs point out, is that the party "manifested that it adopted" the statement "_**or**_ believed [the statement] to be true." FRE 801(d)(2)(B) (emphasis added). It is important to note that the rule does not require that the party believe the statement to be true – only that it adopt the statement as an admission.

Western's argument that it could not have adopted these statements because it lacked first-hand knowledge of them can be quickly dismissed. Party admissions generally do not require firsthand knowledge. *See* FRE 801 Advisory Notes ("The freedom which admissions have enjoyed from . . . the rule requiring firsthand knowledge . . . calls for generous treatment of this avenue to

admissibility."); *United States v McKeon*, 738 F.2d 26, 32 (2d Cir. 1984) ("Admissions may thus be used even though the statement . . . was not based upon the personal knowledge of the speaker and is in a form which would otherwise be inadmissible."); 2 McCormick On Evidence § 255 (8th ed.), July 2022 Update ("[T]he traditional view that first-hand knowledge is not required for admissions is accepted by the vast majority of courts and adopted by the Federal Rules."). Other courts have held the same as true for adoptive admissions. *See, e.g., United States v. STABL, Inc.*, 800 F.3d 476, 484 (8th Cir. 2015) ("the only foundation required for 801(d)(2)(B) adoptive admissions is a showing that they were made or adopted by the opposing party or by its agent on a matter within the scope of that agency; there is no personal-knowledge requirement."); *see also Transbay Auto Service, Inc. v. Chevron USA, Inc.*, 807 F.3d 1113, 1117-1118 (9th Cir. 2015).

And so we turn to Western's argument that these statements from the SOF are not admissible because all Western "admitted" by entering into the SOF was that DANY made certain findings in its investigation. The paragraphs at issue read as follows:

- **Paragraph 7:** DANY's investigation has determined that, before using such a mini crane, the [Department of Buildings ("DOB")] required Western Specialty Contractors: 1) to engage a licensed engineer to assess the project and create design drawings showing how the mini crane was to be used, that it could support the intended load, and how and where it would be tied off to avoid a fall; and to submit these drawings to the DOB to obtain an Alteration Type 2 ("Alt 2") building permit; and 2) to ensure that the mini crane operator had successfully completed a DOB-approved machine manufacturer's training for the specific make and model of mini crane. Similarly, safety regulations required Western Specialty Contractors, as the employer, to make sure the Jekko mini crane operator had received training on the specific make and model of mini crane, and that the mini crane was not overloaded.

- **Paragraph 8:** DANY's investigation has determined that, after ordering the Jekko mini crane, Braico and Edwards requested ironworkers from the Local 580 Ironworkers Union ("Local 580"), without informing Local 580 that the workers would be using a Jekko MPK20W+ mini crane to hoist the panels. Because Braico and Edwards did not mention the Jekko mini crane, Local 580 did not send ironworkers trained and certified to operate it.

- **Paragraph 11:** DANY's investigation has determined that, when Edwards told the Local 580 business agent that Western was planning to use a Jekko mini crane to hoist the panels, the business agent forcefully told Edwards that Edwards and Braico had never told him that they were going to use a Jekko, that none of the men he had sent to the site were certified to operate

a Jekko; and that they should not use the Jekko. The business agent further told Edwards that he would send a Jekko- trained worker the following Wednesday, June 27, 2018, to operate the mini crane, after the worker had attended a Jekko training at the Local 580 union hall scheduled for the following Tuesday. Edwards replied that he "had it covered."

- **Paragraph 12:** DANY's investigation has revealed that, despite the business agent's strong warning, and in violation of DOB and applicable safety rules, Edwards assigned an uncertified ironworker to operate the Jekko mini crane, assuring the ironworker that the Jekko mini crane did not need to be tied off.

- **Paragraph 14:** DANY's investigation has determined that, on or about June 25, 2018, Edwards directed the uncertified ironworker to begin using the Jekko mini crane to hoist the panels; the Jekko mini crane was positioned on the fourth floor, without any tie offs, and with its boom extended straight out to a length of seven feet; a metal bar was attached to the panel to keep it level; in violation of DOB and applicable safety rules, no engineer or certified Jekko operator had calculated whether or in what configuration the Jekko mini crane could lift the weight of the panels; in fact, as positioned, the Jekko mini crane had a load limit of approximately 880 pounds; a glass and metal panel alone weighed approximately 1322 pounds, and with the metal bar attached, the total weight was approximately 1500 pounds.

- **Paragraph 16:** DANY's investigation has determined that at first, as the Jekko mini crane lifted a glass and metal panel up from its flat position on the second floor, the second floor workers carried part of the panel's weight, guiding it up. When the panel was vertical, the workers gave it a push so that it cleared the concrete deck, putting all the panel weight on the Jekko mini crane. Overloaded and unsecured, the Jekko mini crane fell forward, and the boom reached in to the third floor, grabbing ironworker Christopher Jackson and flinging him to the ground. The boom also hit ironworker Jorge Delgado in the back, pushing him further into the building. Had the mini crane been tied off as required, it would not have fallen over. First responders transported both injured workers to Harlem Hospital for treatment. DANY'S investigation has determined that Mr. Jackson suffered severe trauma to his head and is currently in a long term rehabilitation facility battling traumatic brain injury which has affected his ability to speak and to walk. Mr. Delgado was struck in the back, and suffered severe spinal injuries impairing his ability to walk and move.

Obviously, the DANY findings, if accepted as true, would prove up many of the key factual allegations relating to Western's liability in the case – since Western agreed, in the DPA, that it was responsible for the conduct of its employee/agents, Edwards and Braico (whatever they did), and these paragraphs summarize what DANY concluded that Edwards and Braico did.

The question is whether Western's agreement in the DPA that it would not make any statement, in litigation or otherwise, "contradicting" the "facts" asserted in the SOF means that Western has adoptively admitted the truth of DANY's findings, or has merely agreed not to

16

contradict the "fact" that DANY made such findings – which would require plaintiff to prove up the contents of these five paragraphs at trial.

This is not an easy question to answer. However, the drafting about what Western agreed not to contradict is either ambiguous (in which case, it must be interpreted against the likely drafter, which I do not know but I suspect was the DANY) or it favors Western's interpretation that it was not required to admit the truth of DANY's findings – only the fact that they were made. I do not intend to get into a frolic and detour during trial at which DANY will assert that it was requiring Western to accede to the truth of its findings and Western will (as it does here) assert otherwise.

I conclude that Western admitted no more than that DANY made the extensive findings that are set forth in the SOF. In so doing, I note that, from my review of the record (scant though it be) in support of the Fifth Motion *in Limine* in Judge Furman's *General Motors* case cited above (*see* 14-md-2543, Docket #3 1582, 1583), the Statements of Fact GM sought to exclude[3] are not worded like the contested SOF paragraphs in this case, but are straightforward statements of actual fact that GM admitted as part of its Deferred Prosecution Agreement with the Government. (*See, e.g.*, Docket # 1583 at Memo of Law page 3). I can thus distinguish this case from Judge Furman's on a second ground as well.

To the extent the findings contained in DANY's findings are proved at the trial of this action, Western has taken responsibility for the conduct of its employee/agents and so it will automatically be liable for their actions, and the jury will be so advised.

---

[3] I note that in his opinion, Judge Furman allowed for further submissions on the issue of exactly what from the SOF would be allowed into evidence; arguably some of the SOF listed in the brief were about settlement of civil cases, but others were inarguably not. It is very hard to reconstruct this long-dormant case, although it is important precedent in the opinion of this court. But for our purposes, the important thing is that none of the statements of fact sought to be admitted in the case before Judge Furman constituted admissions about what a Government agency found during an investigation ("DANY's investigation found that......"), but rather were bare factual statements about what GM's lawyers advised the company to do and about communications GM received from a Government agency. That is the important distinction to be noted here.

## CONCLUSION

For the foregoing reasons, Western's motion *in limine* is GRANTED IN PART AND DENIED. The parties should consult with Judge Moses about entering into an appropriately worded stipulation.

The Clerk of Court is respectfully directed to remove the motion at Docket Number 129 from the Court's list of open motions. This constitutes a written opinion.

Dated: September 27, 2022

                                                                                       U.S.D.J.

BY ECF TO ALL COUNSEL