USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _12/23/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BDG GOTHAM RESIDENTIAL, LLC, et al.,

          Plaintiffs,

   -against-

WESTERN WATERPROOFING COMPANY,
INC., et al.,

          Defendants.

19-CV-6386 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

By motion dated October 15, 2024 (Dkt. 219), plaintiffs BDG Gotham Residential, LLC (BDG) and ZDG, LLC (ZDG) ask the Court to reconsider portions of its September 30, 2024 Opinion and Order (Op. & Order) (Dkt. 216), which, as relevant here, granted summary judgment to defendant Western Waterproofing Company, Inc. (Western) and its surety on plaintiffs' claims for (i) punitive damages; (ii) consequential damages based on the additional interest and fees they claim to have incurred on certain loans; and (iii) recovery of their legal fees and expenses as contract damages. Additionally, plaintiffs ask the Court to "clarify" that it did not make (or imply) a ruling on a factual issue that remains in dispute between the parties.

For the reasons that follow, plaintiffs' motion will be denied.

## Legal Standards

Reconsideration is an "extraordinary remedy to be applied sparingly in the interests of finality and conservation of scarce judicial resources." *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d. 613, 614 (S.D.N.Y. 2000). Local Civil Rule 6.3, which governs reconsideration motions in this district, requires the party seeking reconsideration to identify the "matters or controlling decisions which counsel believes the Court has overlooked." This standard is strictly enforced, meaning that "reconsideration will generally be denied unless the moving party can point to controlling

decisions or data that the court overlooked." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also In re Facebook, Inc., IPO Securities and Derivative Litigation*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) ("The burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might materially have influenced its earlier decision.") (quoting *Polsby v. St. Martin's Press, Inc.*, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000). Thus, a reconsideration motion is not a vehicle for "presenting the case under new theories," *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), or "making new arguments that could have been previously advanced." *Stone v. Theatrical Inv. Corp.*, 80 F. Supp. 3d 505, 506 (S.D.N.Y. 2015) (quoting *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005)). Nor is such a motion appropriately used to "relitigate[e] old issues" or "otherwise tak[e] a second bite at the apple." A*nalytical Surveys*, 684 F.3d at 52.

"The decision to grant or deny a motion for reconsideration 'rests within the sound discretion of the district court.'" *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 5408171, at *1 (S.D.N.Y. Sept. 27, 2016) (quoting *Williams v. Rosenblatt Sec. Inc.*, 2016 WL 590232, at *4 (S.D.N.Y. Feb. 11, 2016)).

## **Background**

This case arises out of an accident at a construction site. On June 25, 2018, an overloaded mini-crane operated by defendant Western (a subcontractor) toppled off the fourth-floor slab and fell to the ground, seriously injuring two ironworkers and causing the New York City Department of Buildings (DOB) to issue a stop-work order. *See* Op. & Order at 2-7. Plaintiffs BDG (the property owner) and ZDG (the construction manager) allege that the accident caused 185 consecutive calendar days of delay on the construction site, which in turn increased their costs to

complete the project and delayed BDG's ability to generate income from the building. *See id.* at 8-11, 25-55. Plaintiffs sued Western for breach of the parties' Subcontract, negligence, and gross negligence, seeking both compensatory and punitive damages. *Id*. at 7. Additionally, they sued the surety for breach of its Performance Bond. *Id.*

## Punitive Damages

After careful review of the record and analysis of relevant New York caselaw, the Court held that defendants were "entitled to summary judgment on plaintiffs' negligence claim, because it is not based on any non-duplicative injury and does not seek any non-duplicative compensatory damages, and on the gross negligence claim, because the conduct constituting Western's breach of contract was not part of a pattern of similar conduct directed at the public generally," Op. & Order at 2, and therefore could not support a claim for punitive damages. *Id* at 24-25. On reconsideration, plaintiffs agree that the punitive damages question was analyzed under the correct standard, set out in *Rocanova v. Equitable Life Assurance Society of the United States*, 83 N.Y.2d 603, 634 N.E.2d 940 (1994), but contend that the Court "focused too narrowly on the question of whether a 'pattern' of wrongful conduct is evident on the record." Pl. Recon. Mem. (Dkt. 220) at 2. In plaintiffs' view, they have satisfied the *Rocanova* standard because their punitive damages claim seeks to "vindicate public rights." *Id*.[1]

The Court declines to reconsider this point. First, plaintiffs fail to meet the Rule 6.3 standard, in that they do not point to any "controlling decisions or data that the court overlooked." *Shrader*, 70 F.3d at 257. They simply disagree with the Court's detailed analysis of *Rocanova* and

---

[1] Although plaintiffs ask the Court to reconsider its summary judgment ruling as to both of their tort claims, *see* Pl. Recon. Mem. at 1, their argument focuses entirely on the punitive damages issue. *Id*. at 1-2. They do not argue that the Court erred in concluding that their ordinary negligence claim is entirely duplicative of their breach of contract claim.

its progeny. This is "not a ground for a motion for reconsideration contemplated by Local Civil Rule 6.3[.]" *Topps Co., Inc. v. Koko's Confectionary & Novelty*, 2018 WL 5817530, at *1 (S.D.N.Y. Sept. 26, 2018).

Second, plaintiffs fail to show that the Court's analysis was incorrect. In *Rocanova*, the New York Court of Appeals explained that "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights[.]" 83 N.Y.2d at 613, 634 N.E.2d at 943. The Court of Appeals then set forth the four elements that a plaintiff must satisfy, in New York, to obtain punitive damages on a tort claim arising from a contractual relationship: (i) that the defendant's conduct was actionable as an independent tort; (ii) that the tortious conduct was egregious; (iii) that the egregious conduct was directed at the plaintiff; and (iv) that "the conduct was part of a pattern of similar conduct directed at the public generally." 83 N.Y.2d at 613, 634 N.E.2d at 944. This "extraordinary remedy" is available "only in a limited number of instances." *Id.* (citation omitted); *see also New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315-16, 662 N.E.2d 763, 767 (1995) (reiterating the same four elements, including that the defendant's egregious conduct "*must* be part of a pattern directed at the public generally") (all emphases added).

In their summary judgment papers, plaintiffs argued that Western's misconduct should be deemed to meet the *Rocanova* standard because "the harms caused by the [accident] extended beyond the workers on the construction site to the general public as well," Pl. Summ. J. Reply Mem. (Dkt. 208) at 15, making punitive damages "necessary to vindicate a public right." *Id.* The Court disagreed, because the fourth *Rocanova* element is not optional, and plaintiffs "did not plead, have never argued, and proffer no evidence suggesting that the June 25, 2018 accident was part of

a 'pattern of conduct' by Western, much less a pattern directed at 'the general public.'" Op. & Order at 24-25.

On reconsideration, plaintiffs make essentially the same argument. In their view, the fourth *Rocanova* element should be dispensed with where the defendant's breach of contract involves a safety violation on a construction site (rather than fraud or other economic misconduct), because safety violations "necessarily affect the public at large," even where (as here) there is no evidence of any similar violations by the defendant before or after the incident that harmed the plaintiffs. *See* Pl. Recon Mem. at 3-4 (arguing that "[t]his case is materially different" from the mine-run of economic-misconduct cases "because safety violations . . . in the construction of a building necessarily affect the public at large"); Pl. Recon. Reply (Dkt. 222) at 1 (plaintiffs should be permitted to seek punitive damages "in light of the unique danger posed to the general public" by defendants' violations). However, plaintiffs do not identify any New York cases modifying *Rocanova* where public safety is implicated or otherwise permitting a punitive damages claim to proceed for a contract-based injury without a showing that the defendant's misconduct was "part of a pattern." Nor, of course, does this Court have the authority to alter the common law of New York, as set out by the state's highest court. Consequently, the Court adheres to its prior decision regarding punitive damages.

## Extended Loan Expenses

Among the items of delay damages sought by plaintiffs are BDG's "extended loan expenses," Op. & Order at 37; that is, the additional interest and fees that it claims to have paid to various lenders on loans that it claims to have obtained or extended because of the delays resulting from the construction accident. However, as to three of the loans identified by plaintiffs (the "AIG Loan," the "EB-5 Loan," and the "Valley & Member Loans"), BDG failed to "point to any

admissible evidence in the record demonstrating the existence of the damages sought, the amount of those damages, or both." Op. & Order at 2. Consequently, summary judgment was awarded to defendants on those items. *See id*. at 40-42 (AIG Loan), 42-43 (EB-5 Loan), 46-48 (Valley & Member Loans).[2] On reconsideration, BDG argues that the Court "improperly weighed" the evidence in support of the amounts it claimed to have paid in additional interest and fees on the loan, "rather than permitting the jury to decide." Pl. Recon. Mem. at 4. Further, BDG insists, the "numbers in question are in fact calculable from the documents submitted[.]" *Id*. at 5.

Once again, BDG has failed to meet the Rule 6.3 standard. In its summary judgment papers, BDG argued – just as it does now – that "sufficient documentary and testimonial evidence exists to allow [BDG's claims for additional loan interest and fees] to be heard at trial," including "verifying documentation" supporting the amounts claimed. Pl. Summ. J. Reply Mem. at 21; *see also id.* at 22-25 (discussing each loan and arguing that the evidence was sufficient to go to the jury). Although it now complains – in general terms – that the Court improperly analyzed that evidence, it does not and cannot identify a single "material fact," *In re Facebook IPO*, 43 F. Supp. 3d at 373, that the Court improperly "overlooked," *id*., in connection with plaintiffs' extended loan expense claims. Consequently, while BDG "may disagree with the Court's assessment of the evidence," it is not entitled to reconsideration. *Ballard v. Parkstone Energy, LLC*, 2008 WL 4298572, at *2 (S.D.N.Y. Sept. 19, 2008)

Even more fundamentally, BDG appears to misunderstand the basis of the challenged rulings with respect to the extended loan expenses. The Court did not "weigh" the evidence and

---

[2] As to a fourth loan, known as the "AIG Bridge Loan," the Court agreed with BDG that there was admissible evidence in the summary judgment record supporting its claim that it needed a bridge loan in the wake of the June 25, 2018 accident, and documenting at least some of the expenses that BDG incurred to obtain it. Op. & Order at 44-45. Consequently, defendants' summary judgment motion was "denied with respect to that loan." *Id*. at 45.

6

find it unpersuasive. Rather, after a careful review of the documents and deposition testimony presented by the parties, the Court found "*no* evidence in the record that the AIG Loan (or any portion of it) was extended, or that any additional interest or fees were charged on that loan because of the construction delays caused by the June 25, 2018 accident," Op. & Order at 41 (explaining that the AIG Loan was "construction to perm," such that, with or without construction delays, BDG "would have continued to pay 5.1% interest on that loan through 2013") (all emphases added), and "*no* evidence . . . from which the Court (or a reasonable jury) could determine what those damages would be." *Id*. at 42 (noting that plaintiffs' damages expert used a "daily rate" of $7,459.51, which neither he nor any other witness ever explained, and which could not be derived from the "scattered" AIG Loan documents before the Court). Similarly, with respect to the EB-5 Loan, there was "*no* evidence in the record suggesting that [it] was extended or that BDG otherwise incurred excess costs on that loan due to the delays caused by Western," *id*. at 43, and nothing to "show the amount of any such damages" if they existed. *Id*. at 44 (noting that plaintiffs' expert again used a "daily rate," in this instance $4,548.61, but that neither he nor any other witness ever "explain[ed] the basis of that daily rate or point[ed] to any documents from which it can reliably be calculated"). Finally, with respect to the Valley & Member Loans, the Court was unable to find *any* admissible evidence supporting plaintiffs' assertion (made only in their briefs) that some or all of those loans "were necessary due to the delays caused by Western." *Id*. at 47. The record was equally bare as to the basis of BDG's contention that the "total cost" of the Valley & Members Loans was $8,035,136.10 – a number that plaintiffs "did not even begin to explain" in their summary judgment papers. *Id*. at 46-47.[3]

---

[3] In their reconsideration briefs, plaintiffs argue – again – that "the numbers in question are in fact calculable from the documents submitted," Pl. Recon. Mem. at 5, but fail – again – to do the math. They do not even identify the specific documents (if they exist) from which the relevant

Because BDG has the burden of proof as to damages, it was required, on summary judgment, to "come forward with admissible evidence," sufficient for the jury to find in its favor, as to both the existence and the amount of its extended loan expense damages. Op. & Order at 29 (quoting *Simsbury-Avon Pres. Soc'y, LLC v. Metacon Gun Club, Inc*., 575 F.3d 199, 204 (2d Cir. 2009)); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"); *Weinstock v. Columbia Univ*., 224 F.3d 33, 41 (2d Cir. 2000) (at the summary judgment stage, "[t]he time has come to put up or shut up") (internal quotation marks and citation omitted). As to the AIG Loan, the EB-5 Loan, and the Valley & Member Loans, BDG utterly failed to make the necessary showing. Consequently, the Court adheres to its prior rulings regarding those loans.

## Attorneys' Fees

Plaintiffs contend that the indemnification clause in the Subcontract between ZDG and Western permits them to recover, as contract damages, their legal fees and expenses incurred to pursue their claims against Western (including in this action). Defendants contend that the clause was intended only to indemnify plaintiffs against third-party claims. After careful analysis of the contractual language under New York law, the Court sided with defendants, and granted summary judgment in their favor as to plaintiffs' fee-shifting claim. Op. & Order at 52-55.

On reconsideration, plaintiffs agree that the Court identified the correct standard, set forth in *Hooper Assocs., Ltd. v. AGS Computers, Inc*., 74 N.Y.2d 487, 492, 548 N.E.2d 903, 905 (1989), but disagree with the Court's application of that standard to the language of the Subcontract. Once

---

calculations could be performed. *See id*. (referring generally to "loan documents," "requisitions," and "invoices"); Pl. Recon. Reply at 3 (same).

again, however, plaintiff's reconsideration motion simply recycles their summary judgment arguments. *Compare* Pl. Recon. Mem. at 6-7 *with* Pl. Summ. J. Reply at 27-30. As explained above, this is "not a ground for a motion for reconsideration[.]" *Topps Co.*, 2018 WL 5817530, at *1. Nor are plaintiffs entitled to a "second bite at the apple," A*nalytical Surveys*, 684 F.3d at 52, by arguing – for the first time – that if they are not entitled to fee-shifting under the Subcontract, they are entitled to it under the Performance Bond issued by Western's surety. *See Stone*, 80 F. Supp. at 506 (reconsideration is not a vehicle for "making new arguments that could have been previously advanced"). The Court therefore adheres to its prior ruling regarding plaintiffs' claim for their legal fees and costs incurred in pursuing Western and its surety.

### Clarification

Finally, plaintiffs ask the Court to "clarify" that it was "making no determination" about whether "hoisting activities that did not require a permit" could resume between July 16, 2018 (when the DOB partially rescinded its stop-work order) and October 4, 2018 (when the stop-work order was fully rescinded). Pl. Recon. Mem. at 10. No clarification is required. Nothing in the Opinion and Order suggests that the Court was taking a position as to this factual issue, which the parties dispute – and which, in any event, does not bear on any of the claims or items of damage as to which they sought summary judgment.

### Conclusion

For the reasons stated above, plaintiffs' motion for reconsideration (Dkt. 219) is DENIED.

Dated: New York, New York          **SO ORDERED.**
       December 23, 2024

 

_____
**BARBARA MOSES**
**United States Magistrate Judge**