USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _12/30/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BDG GOTHAM RESIDENTIAL, LLC, et al., | |
| Plaintiffs, | 19-CV-6386 (BCM) |
| -against- | **OPINION AND ORDER** |
| WESTERN WATERPROOFING COMPANY, INC., et al., | |
| Defendants. | |

**BARBARA MOSES, United States Magistrate Judge.**

By motion dated October 24, 2024 (Dkt. 223), made pursuant to 28 U.S.C. § 1292(b), plaintiffs BDG Gotham Residential, LLC (BDG) and ZDG, LLC (ZDG) seek to certify for interlocutory appeal the portion of my September 30, 2024 Opinion and Order (Op. & Order) (Dkt. 216) holding that punitive damages are unavailable to them under New York law. On December 23, 2024, I denied plaintiffs' motion for reconsideration on this point. (Dkt. 231.) I now deny their § 1292(b) motion because, as discussed in more detail below, they have not demonstrated that there is a substantial ground for difference of opinion on the question presented. Nor have they shown that an immediate appeal would materially advance the ultimate resolution of this trial-ready case.

## Background

As described in detail in the Opinion and Order, this case arises out of a construction accident at the site of a new, multi-story, mixed-use building in upper Manhattan. Plaintiff BDG is the property owner. Plaintiff ZDG was the construction manager. Defendant Western Waterproofing Company, Inc. (Western) was a subcontractor retained to install the building's façade. *See* Op. & Order at 2-3. On June 25, 2018, an overloaded mini-crane operated by Western personnel toppled off the fourth-floor slab and fell to the ground (inside the perimeter of the closed construction site), seriously injuring two ironworkers and causing the New York City Department

of Buildings (DOB) to issue a stop-work order. *See id.* at 5-6. Plaintiffs allege that the accident caused 185 consecutive calendar days of delay on the construction site, which in turn increased their costs to complete the project and delayed BDG's ability to generate income from the building. *See id.* at 8-11, 25-55. Plaintiffs sued Western for breach of the parties' Subcontract, negligence, and gross negligence, seeking both compensatory and punitive damages. *Id.* at 7. Additionally, they sued Western's surety for breach of its Performance Bond. *Id.*

After discovery was completed, the parties consented to my jurisdiction for all purposes (*see* Dkt. 200) and moved for partial summary judgment. Among other things, plaintiffs sought summary judgment as to Western's liability for breach of the Subcontract – which Western conceded, *see* Op. & Order at 14 – and Western sought summary judgment as to plaintiffs' tort claims, arguing that they were duplicative of the contract claim because they "arise out of the same conduct, allege the same injuries, and seek the same damages." *Id.* at 20.

On September 30, 2024, I granted both motions in part. As relevant here, I dismissed plaintiffs' ordinary negligence claim as duplicative of their contract claim because it "is not based on any non-duplicative injury and does not seek any non-duplicative compensatory damages," Op. & Order at 2; that is, any damages that could not also be recovered under the Subcontract. *Id.* at 21. I then granted summary judgment for Western on the gross negligence claim as well, ruling that, because plaintiffs "did not plead, have never argued, and proffer no evidence suggesting that the June 25, 2018 accident was part of a 'pattern of conduct' by Western," Op. & Order at 24-25, they cannot recover punitive damages under the standard set forth in *Rocanova v. Equitable Life Assurance Soc'y*, 83 N.Y.2d 603, 613, 634 N.E.2d 940, 944 (1994). Absent a "path to punitive damages," I concluded, "both of [plaintiffs'] tort claims must be dismissed as duplicative of the claim for breach of contract." *Id.* at 25.

Plaintiffs now seek to certify my ruling that "punitive damages [are] unavailable." Pl. Mem. (Dkt. 224) at 1-2. Specifically, they seek an immediate appeal as to whether, under New York law, the *Rocanova* standard can be satisfied where "no 'pattern' may be evident" but where the defendant's misconduct involved safety violations that "expos[e]d the public at large to a substantial risk of death or injury." *Id.* at 3.

## **Legal Standards**

"It is a basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). Nonetheless, § 1292(b) permits certification of an order for interlocutory appeal "when the court determines: '(1) that such order involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion and (3) that an immediate appeal from [that] order may materially advance the ultimate termination of the litigation.'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 529 (S.D.N.Y. 2014) (quoting 28 U.S.C. § 1292(b)). The moving party has the burden of showing that "all of the substantive § 1292(b) criteria" are met. *Casey v. Long Island R. Co.*, 406 F.3d 142, 146 (2d Cir. 2005); *see also S.E.C. v. Straub*, 2013 WL 4399042, at *2 (S.D.N.Y. Aug. 5, 2013) ("These three criteria are conjunctive, not disjunctive, and courts may only certify an interlocutory appeal where all three are satisfied.").[1]

Because § 1292(b) is "a rare exception to the final judgment rule that generally prohibits piecemeal appeals," *Koehler*, 101 F.3d at 86, certification is "strongly disfavored." *Adar Bays, LLC v. Aim Expl., Inc.*, 310 F. Supp. 3d 454, 456 (S.D.N.Y. 2018). Leave to seek an interlocutory appeal is properly reserved for "exceptional circumstances," *Klinghoffer v. S.N.C. Achille Lauro*

---

[1] "[A] district court's certification confers no right to appeal but only the right to petition the court of appeals to exercise its discretion to entertain an appeal." *Casey*, 406 F.3d at 146; *see also* 28 U.S.C. § 1292(b) (after the district court certifies an order for interlocutory appeal, the would-be appellant must petition the Court of Appeals for leave to appeal, whereupon the Court of Appeals may, "in its discretion, permit an appeal to be taken from such order").

*Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)); *accord In re Facebook*, 986 F. Supp. 2d at 529-30 (collecting cases), and is never mandatory. *See Espinal v. Sephora USA, Inc.*, 2024 WL 4751279, at *4 (S.D.N.Y. Nov. 12, 2024) ("[E]ven when the elements of § 1292(b) are satisfied, the 'district court retain[s] unfettered discretion to deny certification.'" (quoting *Dill v. JPMorgan Chase Bank, N.A.*, 2021 WL 3406192, at *4 (S.D.N.Y. Aug. 4, 2021))); *accord In re Liddle & Robinson, L.L.P.*, 2020 WL 4194542, at *4 (S.D.N.Y. July 21, 2020) (district courts have "broad discretion to deny certification even where the statutory criteria are met").

To satisfy the first statutory requirement, the movant must show that question for appeal is "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008) (internal quotation marks omitted). Additionally, the question must be "controlling," in that its resolution "would either 'terminate the action' or at least 'materially affect the litigation's outcome.'" *Capri Sun GmbH v. Am. Beverage Corp.*, 2022 WL 3137131, at *3 (S.D.N.Y. Aug. 5, 2022) (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 393 (S.D.N.Y. 2014)). A state law question may qualify as "controlling" for purposes of § 1292(b), *see, e.g.*, *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 2003 WL 21543529, at *2 (S.D.N.Y. July 9, 2003) (whether certain contractual limitation-of-liability clauses were enforceable under state law); however, since "circuit courts are in no better position to make a determination concerning state law than [the district court] finds itself," it is "quite likely," in such a case, that "the Court of Appeals, should it accept the interlocutory appeal, would feel compelled to itself certify the state law issue to the [state supreme court]." *Espinal*, 2024 WL 4751279, at *4 (quoting *Cummins v.*

4

*EG & G Sealol, Inc.*, 697 F. Supp. 64, 70-71 (D.R.I. 1988)) (internal quotation marks omitted; brackets in original). Thus, a "quick" and "clean" decision is less likely on a state law question.

To satisfy the second requirement – that there is "a substantial ground for difference of opinion" as to the question for appeal – the movant must show that "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Youngers v. Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295, 299 (S.D.N.Y. 2017). However, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). Nor is it sufficient to show "that the parties strongly disagree on an issue." *Florio v. City of New York, N.Y.*, 2008 WL 3068247, at *1 (S.D.N.Y. Aug. 5, 2008). Rather, the issue must be "truly one on which there is a *substantial* ground for dispute." *In re Flor*, 79 F.3d at 284 (quoting *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 283 (E.D. Pa. 1983)).

Courts place "particular weight" on the third § 1292(b) factor, *see Florio*, 2008 WL 3068247, at *1, which requires the movant to demonstrate that the appeal "promises to advance the time for trial or to shorten the time required for trial." *Id.* (quoting *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998)). Thus, for example, certification has been granted where the appeal, if successful, would "significantly narrow the scope of discovery . . . and the proof that the parties would be able to present at trial, saving the parties and the public time and money." *Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012), *aff'd*, 712 F.3d 136 (2d Cir. 2013). The third requirement is particularly difficult to satisfy where – as here – the case is trial-ready and the issue to be appealed involves a question of state law. *See, e.g.*, *Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*, 2024 WL 4555631, at *1 (S.D.N.Y. Oct. 22, 2024) ("An appeal at this point, which may involve certification to the New York Court of Appeals with respect to the purely state law issue of the scope of the unjust

enrichment claim, will add considerable delay to the ultimate resolution of this case and is the antithesis of a procedural device to 'materially advance the ultimate termination of the litigation.'").

### Analysis

In *Rocanova*, the New York Court of Appeals explained that "[p]unitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights[.]" 83 N.Y.2d at 613, 634 N.E.2d at 943. The Court of Appeals then set forth the four elements that a plaintiff must satisfy, in New York, to obtain punitive damages on a tort claim arising from a contractual relationship: (i) that the defendant's conduct was actionable as an independent tort; (ii) that the tortious conduct was egregious; (iii) that the egregious conduct was directed at the plaintiff; and (iv) that "the conduct was part of a pattern of similar conduct directed at the public generally." 83 N.Y.2d at 613, 634 N.E.2d at 944. This "extraordinary remedy" is available "only in a limited number of instances." *Id.* (citation omitted); *see also New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315-16, 662 N.E.2d 763, 767 (1995) (reiterating the same four elements, including that the defendant's egregious conduct "*must* be part of a pattern directed at the public generally") (emphasis added).

In their § 1292(b) motion, plaintiffs argue – much as they did on summary judgment and in their reconsideration motion – that the fourth *Rocanova* element should be dispensed with where the defendant's breach of contract involves safety violations on a construction site. *See* Pl. Mem. at 3 ("While no 'pattern' may be evident here, the exposure of the public at large to a substantial risk of serious death or injury is the 'conduct aimed at the public generally' required under *Rocanova*."); *id.* at 5 ("The availability of punitive damages in this scenario – one just as imbued with the public interest as fraudulent conduct aimed at multiple members of the public – should be addressed by the Second Circuit.").

6

*Whether Plaintiffs Present a Controlling Question of Law*

Plaintiffs concede that the interlocutory appeal they propose would neither terminate this action nor narrow the issues for trial. However, they argue, it could "materially affect the outcome," Pl. Mem. at 2 (quoting *Capri Sun*, 2022 WL 3137131, at *3), and presents a "pure question of law that can be resolved quickly without the need to study the record in depth." *Id*. Defendants disagree, arguing that there is "no undisputed evidence in the record, either factual or expert, that the public at large was ever physically endangered given that the [mini-crane] was being operated on a private construction site with a tall fence and barrier set at the appropriate distance from the building as per DOB regulations," Def. Mem. (Dkt. 225) at 3, and thus that "[a] reversal of the Court's Order would not automatically reinstate plaintiffs' punitive damages claim." *Id.* at 4.

Although the question is a close one, I conclude that plaintiffs have satisfied the first § 1292(b) requirement. An issue of law may be deemed "controlling," for this purpose, if its resolution "will determine the amount and method of proof of damages at trial." *In re Scotts EZ Seed Litig.*, 2017 WL 6398627, at *1 (S.D.N.Y. Aug. 31, 2017) (certifying interlocutory appeal of ruling that "statutory damages are available in class actions brought in federal court asserting claims under New York General Business Law ('GBL') Sections 349 and 350"); *see also In re Air Crash off Long Island, N.Y. on July 17, 1996*, 27 F. Supp. 2d 431, 434 (S.D.N.Y. 1998) (certifying interlocutory appeal of rulings "affecting . . . the availability and measure of damages"). Moreover, while defendants are correct that the evidence as whether the "public at large" was ever physically endangered is disputed, the question for the Court of Appeals – on the present record – would not be whether plaintiffs are *entitled* to punitive damages, but simply whether they should be permitted to put that evidence before the jury and *ask* for punitive damages.

*Whether a Substantial Ground for Difference of Opinion Exists*

Plaintiffs have failed, however, to show that there is a substantial ground for difference of opinion as to the question they seek to certify. They make no real effort to argue that there is "conflicting authority on the issue." *Youngers*, 228 F. Supp. 3d at 299. Nor could they. In the 30 years since *Rocanova* was decided, it has been consistently applied, by federal and state courts alike, to foreclose punitive damages where the defendant's breach was not part of a pattern directed at the public – even where the first three prongs of the test were met.[2] Instead, plaintiffs contend that the question they wish to put to the Second Circuit "presents 'particularly difficult' questions that are of first impression in this Circuit." Pl. Mem. at 3.

I disagree. As defendants point out, BDG and ZDG are not the first litigants to ask the Second Circuit to "create an exception" to a well-understood principle of New York law by "remov[ing] the word 'pattern' from the *Rocanova* holding." Def. Mem. at 1, 5. In *TVT Recs.*, for example, appellees (who had been awarded punitive damages at trial) asked the Court of Appeals to recognize an "exception" to *Rocanova* where, among other things, "the plaintiff establishes a sufficiently high degree of bad faith." 412 F.3d at 94. The Second Circuit declined to do so,

---

[2] *See, e.g.*, *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (agreeing with district court that punitive damages were unavailable in breach-of-warranty case because the alleged breach was not "indicative of a broader 'pattern of conduct,'" even though plaintiff alleged that the vehicle in question was "unsafe to drive"); *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 93-95 (2d Cir. 2005) (disallowing punitive damages because "New York law only permits such an award when a defendant's conduct is 'part of a pattern directed at the public generally,' a requirement not satisfied in this case"); *United States v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 161 (2d Cir. 1996) (assuming that defendant's conduct was tortious, egregious, and directed at plaintiff, but affirming dismissal of punitive damages claim because "[n]one of this . . . evinces a pattern of conduct harming the general public"); *see also Paull v. First UNUM Life Ins. Co.*, 295 A.D.2d 982, 984, 744 N.Y.S.2d 95, 98 (4th Dep't 2002) (punitive damages were "not recoverable as a matter of law" where "the aggravated injury allegedly sustained by plaintiff . . . [was] not part of a pattern of egregious tortious conduct directed at the public"); *Murray-Gardner Mgmt. Inc. v. Iroquois Gas Transmission Sys. L.P.*, 229 A.D.2d 852, 854, 646 N.Y.S.2d 418, 420 (3d Dep't 1996) ("[P]laintiff's request for punitive damages was properly dismissed in the absence of a showing by plaintiff that defendant engaged in egregious tortious conduct toward it that was part of a pattern directed at the public generally.").

explaining that it had "no reason to question [the] continued validity" of *Rocanova* and *NYU v. Cont'l Ins*. *Id.* Nor have plaintiffs identified any other cases suggesting that the "pattern" requirement set forth in *Rocanova* and reinforced in *NYU v. Cont'l Ins.* can be (or should be) dispensed with if the defendant's misconduct involved safety violations on a construction site.[3] I therefore conclude that the issue plaintiffs offer for appeal does not present a "*substantial* ground for dispute." *In re Flor*, 79 F.3d at 284. Moreover, as Judge Engelmeyer noted in *Espinal*, "circuit courts are 'in no better position to make a determination concerning state law than [the district court] finds itself.'" 2024 WL 4751279, at *4.

*Whether an Immediate Appeal Would Materially Advance the Termination of the Case*

Plaintiffs have also failed to show that an immediate appeal would advance the ultimate termination of the litigation. This case is already more than four years old and is now ready for trial.[4] An interlocutory appeal would thus delay rather than "advance the time for trial." *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020). That delay could be

---

[3] Plaintiffs cite *Trustees of Columbia Univ. v. Gwathmey Siegel & Assocs. Architects*, 192 A.D.2d 151, 154, 601 N.Y.S.2d 116, 118 (1st Dep't 1993), for the proposition that the "construction of a façade for a tall [dormitory] building in a heavily trafficked public area of a college campus, is so affected with the public interest that the failure to perform competently can have catastrophic consequences[.]" Pl. Mem. at 3. However, *Trustees of Columbia* was decided prior to *Rocanova*. Moreover, the question in that case (filed after "a large chunk of the facade fell into the complex's internal courtyard" while students were living there, *see* 192 A.D.2d at 154, 601 N.Y.S.2d at 118), was whether the general contractor could be sued for negligence, not whether it could be assessed punitive damages. *See id.* (reasoning that the public safety risks inherent in the defective construction of such a building supported the conclusion that the contractor had "a legal duty independent of the contract itself") (citation omitted). Under *Rocanova*, punitive damages cannot be assessed unless the defendant's conduct was tortious, egregious, directed at the plaintiff, *and* part of a "similar pattern directed at the public generally." 83 N.Y.2d at 613, 634 N.E.2d at 944.

Plaintiffs' reliance on *Steel Institute of New York v. City of New York*, 832 F. Supp. 2d 310, 314 (S.D.N.Y. 2011) is likewise misplaced. Plaintiffs in that case unsuccessfully challenged local laws and regulations governing construction cranes on preemption grounds. The opinion did not discuss the *Rocanova* rule, punitive damages, or any other issue pertinent to private civil litigation against crane operators for delay damages.

[4] The parties' proposed joint pretrial order is due on January 10, 2025, and the parties have been advised to plan for trial in April 2025. (*See* Dkts. 218, 230.)

9

substantial, as the question for appeal is one of state law. *See Espinal*, 2024 WL 4751279, at *4 (denying certification, even though the New York courts were "divided on the issue" as to which certification was sought, because "certifying a question of state law to a federal circuit court inherently poses a substantial risk of protracting a litigation"); *Emergency Physician Servs. of N.Y.*, 2024 WL 4555631, at *1 (S.D.N.Y. Oct. 22, 2024) (denying certification because "[a]n appeal at this point, which may involve certification to the New York Court of Appeals with respect to the purely state law issue of the scope of the unjust enrichment claim, will add considerable delay to the ultimate resolution of this case"); *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 747-48 (S.D.N.Y. 2006) (denying certification because "the substantial delay resulting from an interlocutory appeal at this point would derail the resolution of the merits of this action for potentially several years" and because "[t]his result would be particularly severe if the Second Circuit were to choose not to decide the appeal itself but instead to certify the state law question to the New York Court of Appeals"); *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 573 (S.D.N.Y. 2001) (denying certification of state law question where, "given the amount of time required for the multiple reviews sought, the actual result would be to further prolong what has already been a protracted litigation").

In this case, moreover, there is no possibility that the interlocutory appeal would end the case or "narrow the scope" of the trial. *Primavera*, 139 F. Supp. 2d at 570 (citing *Fed. Hous. Fin. Agency*, 858 F. Supp. 2d at 338). If successful, the proposed appeal would *expand* the scope of the trial and the array of damages potentially available to plaintiffs. If unsuccessful, it would merely delay the resolution of the case, with no other effect on the outcome (and no guarantee that the parties would not appeal again, on other issues, from the final judgment). There is, to be sure, a possibility that resolving the punitive damages issue now would avoid the need for a post-judgment appeal and (if that appeal were successful) a second trial. However, given my conclusion that the

punitive damages issue does not present a "substantial ground for dispute," the efficiency calculus does not come out in plaintiffs' favor.

Finally, while it is true that a pretrial resolution of the punitive damages issue could "affect the parties' bargaining positions" and in that manner potentially "hasten the termination of this litigation through settlement," Pl. Mem. at 5 (quoting *Fed. Hous. Fin. Agency*, 858 F. Supp. 2d at 338), this argument proves too much. Any ruling concerning the relief available at trial tends to "affect the parties' bargaining positions." *See Capri Sun*, 2022 WL 3137131, at *4 (S.D.N.Y. Aug. 5, 2022) ("[I]nterlocutory appellate resolution of a contested issue always conceptually has the capacity to promote settlement by narrowing the areas in dispute[.]"). The mere possibility that the parties will settle the case upon hearing from the Second Circuit, therefore, cannot be grounds for making a "rare exception" to the federal rule "that generally prohibits piecemeal appeals." *Koehler*, 101 F.3d at 865.

## Conclusion

For the foregoing reasons, plaintiffs' motion is DENIED. The Clerk of Court is respectfully directed to close the motion at Dkt. 223.

Dated: New York, New York
December 30, 2024                    SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

11